UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
JONATHAN JUNG                                                      :
                                                                   :   Index No.
                    Plaintiff,                                     :
                                                                   :
        -against-                                                  :   **COMPLAINT**
                                                                   :
SKADDEN, ARPS, SLATE MEAGHER & FLOM,                               :   **PLAINTIFF DEMANDS A**
LLP and SUSAN DORNFELD,                                            :   **TRIAL BY JURY**
                                                                   :
                    Defendants.                                    :
------------------------------------------------------------------ X

       Plaintiff, Jonathan Jung, by his attorney, Brendan Chao, Esq., for his Complaint alleges as follows:

### THE PARTIES

       1.    Plaintiff, Jonathan Jung ("Mr. Jung" or "Plaintiff") is an Asian-American who was born in Seoul, South Korea. Mr. Jung resides at 33 West Hardwood Terrace, Palisades Park, New Jersey. Mr. Jung was formerly employed by Skadden, Arps, Slate Meagher & Flom, LLP.

       2.    Defendant, Skadden, Arps, Slate Meagher & Flom, LLP ("Skadden Arps") is a law firm with international offices and offices within the United States, including the offices in which Plaintiff worked in New York, New York, and White Plains, New York. Its principal place of business is New York, New York.

       3.    Defendant, Susan Dornfeld ("Ms. Dornfeld") is the Treasurer of Skadden Arps' New York office. Ms. Dornfeld supervised Mr. Jung during his employment with Skadden Arps.

## THE NATURE OF THE ACTION

4.      This is a civil action for damages and remedies for discrimination in employment on the basis of national origin discrimination, racial discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the New York State Executive Law, as amended, § 290 et seq. ("New York State Human Rights Law"); and the Administrative Code of the City of New York, as amended, § 8-101 et seq. ("New York City Human Rights Law"), as well as damages and remedies available under the common law. Specifically, Defendants discriminated against Mr. Jung because of his national origin and race, and retaliated against him for engaging in protected activity by terminating his employment.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.      Mr. Jung filed a charge of discrimination on the basis of race, national origin, and retaliation, in June 2004 with the Equal Employment Opportunity Commission ("EEOC").

7.      On or about January 27, 2005, Mr. Jung received a Dismissal and Notice of Right to Sue letter from the EEOC.

8.      Plaintiff has served a copy of this complaint on the New York City Commission on Human Rights and Corporation Counsel.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiff's claims occurred within the Southern District of New York.

## **FACTS**

10. Mr. Jung is Asian-American of Korean descent.

11. On or about September 8, 1998, Skadden Arps hired Mr. Jung as a Tax Coordinator.

12. During his initial interview with Skadden Arps, Mr. Jung met with Mr. James McCarthy ("Mr. McCarthy"). During the interview process, Mr. Jung spoke to a number of Skadden Arps' employees including, Andrea Zavell and Will Eiwanger, and a Human Resources employee before returning to James McCarthy for a second interview.

13. Defendant, Ms. Susan Dornfeld met briefly with Mr. Jung during the interview process, only asking a few questions and deferring the decision to hire Mr. Jung to Mr. McCarthy.

14. Mr. Jung's responsibilities at Skadden Arps included managing and overseeing quarterly tax payments for international partners, advising attorneys on the guidelines, policies, costs, and compliance on various tax issues, and managing Skadden Arps's expatriate tax issues.

15. Throughout Mr. Jung's employment with Skadden Arps, he was qualified for the position he held, and he performed his duties in a professional and competent manner.

16. On October 1, 2001, Skadden Arps promoted Mr. Jung to International Tax Supervisor.

17. Beginning in February 2003, Mr. Jung began to experience discrimination based on his race and national origin.

18. This culminated with the termination of Mr. Jung's employment in retaliation for a number of complaints he made concerning discrimination in the workplace.

19. Defendant Skadden Arps provided technology allowances to several Caucasian non-lawyer employees in Mr. Jung's department. These allowances included new computers, software, and hardware peripherals. The technology allowances, however, were not provided to Mr. Jung.

20. Ms. Dornfeld, a Caucasian employee of Skadden Arps who was Mr. Jung's supervisor, routinely recommended higher bonuses and raises for Caucasian employees in Mr. Jung's department while giving lower bonuses and raises to Mr. Jung and other minority employees in her department.

21. In or about December 1999, Ms. Dornfeld resigned and left Skadden Arps.

22. During Ms. Dornfeld's absence, Mr. Jung was promoted.

23. On or about October 7, 2002, Skadden Arps rehired Ms. Dornfeld, and she began to aggressively pursue a pattern of discrimination whereby she forced the resignation of minority employees, and began hiring Caucasian employees. This included, within a few months of her return to Skadden Arps, interviewing candidates for Mr. Jung's position.

24. Following Ms. Dornfeld's return to Skadden Arps, Mr. Jung was never again promoted.

25. Ms. Dornfeld made discriminatory decisions regarding performance evaluations, procedures for assigning work, and limited the opportunities for promotions to Mr. Jung and other racial minority employees in her department, including a number of Asian employees.

26. Ms. Dornfeld, who is responsible for, among other things, preparing annual performance evaluations for employees, has routinely given minority employees, including Mr.

Jung, poor evaluations in an effort to "paper" their files for poor performance, thereby forcing their resignations.

27. Ms. Dornfeld took this course of action so that she could hire Caucasian employees to replace the minority employees who were forced to resign.

28. Ms. Dornfeld forced the resignation of a number of racial minority employees, such as Rosie Francis, Eugene Lam, and Violet Chan, and replaced them all with Caucasian employees.

29. Ms. Dornfeld changed the evaluations of minority employees after their respective evaluations were submitted to her by other supervisors.

30. Although these employees stated non-discriminatory reasons for their respective resignations, Ms. Dornfeld's discriminatory treatment toward them was a motivating factor in their decisions to leave Defendant Skadden Arps employment.

31. Following her rehire by Defendant Skadden Arps, Ms. Dornfeld hired only Caucasian employees into Defendant Skadden Arps' Tax and Investment Department.

32. Ms. Dornfeld also gave one direct peer of Mr. Jung's, a Caucasian, two raises within one year. Skadden Arps' policy only allows for one raise per year.

33. Upon information and belief, Ms. Dornfeld has never given two annual raises to a minority employee at Skadden Arps.

34. Racial minority employees were often asked to work late while Caucasian employees were permitted to leave as normally scheduled.

35. Ms. Dornfeld used abusive language toward Asian Americans, especially Mr. Jung, but did not use such language with Caucasian employees. For example, Ms. Dornfeld

5

summoned Mr. Jung into her office in April 2003, and began yelling at him, stating in part, "What the fuck are you talking about?  I don't understand what the fuck you just said."

36. Mr. Jung never observed Ms. Dornfeld swearing at a Caucasian employee.

37. Ms. Dornfeld made racially derogatory comments.  For example, on or about February 17, 2003, following an office move to White Plains, Ms. Dornfeld was arranging desk assignments in the new office, and she stated, "I don't want to have Orientals and blacks sitting together because they will spend all day talking."

38. Ms. Dornfeld completed Mr. Jung's 2003 performance evaluation, which was filled with comments implying that he was unskilled with or uncomfortable with the English language.

39. An Asian American employee and an African American employee from other Skadden Arps departments sought to apply for two vacant positions in Mr. Jung's department.  Neither employee was selected for the vacant positions, and the Asian American employee was told that taking the position would involve a reduction in salary, and he was discouraged from applying.

40. As noted above, the Asian American employee did not fill the position, instead, a Caucasian, Linda Dromgoole ("Ms. Dromgoole") was hired and was paid an annual salary of $88,000, which would have been an increase in salary for the Asian American employee who had originally applied for the position.

41. In another instance, an Asian American employee, Eugene Lam ("Mr. Lam") resigned in early 2004.  At the time of his resignation he was earning approximately $65,000.  Mr. Lan was replaced by a Caucasian female at a salary of approximately $85,000.

42.     A Caucasian employee, despite insubordinate e-mails to Ms. Dornfeld and James Waters, was never disciplined, and instead, received good reviews in his annual evaluation.

43.     Despite Skadden Arps's policy of strict adherence to established disciplinary action procedures, Mr. Jung was never given an initial warning for his alleged poor performance.

44.     Mr. Jung received a negative performance evaluation in December 2003 from Defendant Skadden Arps's Human Resources Department, but contrary to their disciplinary action procedure, Defendant Skadden Arps failed to provide a memorandum of the disciplinary action until several months after the alleged complaint, and then only after Mr. Jung made several requests for the memorandum.

45.     In an effort to appear to be in compliance with their disciplinary action procedure, Defendant Skadden Arps backdated the memorandum to December 11 2003.

46.     In trying to understand the negative December 2003 performance evaluation, Mr. Jung spoke with Jim Waters ("Mr. Waters"), a recent hire who is Caucasian, and who eventually replaced Mr. Jung. Mr. Waters told Mr. Jung that the negative performance evaluation was "All Susan's [Dornfeld] doing."

47.     In March 2004, Mr. Jung reported Ms. Dornfeld's discriminatory misconduct to Earle Yaffa ("Mr. Yaffa"), a managing director at Skadden Arps.

48.     This action was in keeping with Defendant Skadden Arps's procedure for reporting workplace discrimination.

49.     Mr. Yaffa failed to take any action, and the following month, in April 2004, Mr. Jung received a written warning concerning his performance.

50.     Mr. Jung made several other reports of discrimination, but no action was taken.

7

51. In or about March 2004, the law firm of Sklover & Associates, predecessor counsel to Brendan Chao, communicated in writing with Defendant Skadden Arps, and informed them of Mr. Jung's complaints of racial discrimination.

52. Henry Baer, an of-counsel attorney to Skadden Arps, claims he investigated these complaints, but failed to speak to Mr. Jung or any of the other employees who had been discriminated against.

53. Other employees who are members of racial minorities complained of discrimination to Laura Henschel, the director of Human Resources at Skadden Arps, but she also failed to take any action.

54. Repeated criticism of Mr. Jung's performance, despite his previous satisfactory performance, as reflected in his previous performance evaluations, culminated in his dismissal on June 7, 2004.

55. Mr. Jung's dismissal had been planned for several weeks, with drafts of his dismissal papers written as early as May 26, 2004, perhaps sooner.

56. Toward the end of his employment with Skadden Arps, Skadden Arps attempted to force Mr. Jung to resign without receiving a promised relocation bonus. Upon information and belief, Skadden Arps did not try to withhold the relocation bonus of similarly situated Caucasian employees.

57. Based on the above facts, Mr. Jung believes that his race and national origin played an impermissible role in Skadden Arps's discriminatory treatment of him, and his reporting of the discriminatory conduct resulted in Skadden Arps's retaliatory termination of his employment.

58. Mr. Jung also believes that Skadden Arps has participated in a pattern and practice of discriminating against members of racial minority employees, Asian Americans in particular.

59. The reason or reasons given by Defendants for terminating Plaintiff's employment is/are a pretext for discrimination.

**FIRST CAUSE OF ACTION**
(National Origin and Race
Discrimination Under Title VII)

60. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 as if separately set forth herein.

61. At all relevant times, Plaintiff was an "employee" of Defendant Skadden Arps for purposes of Title VII.

62. Plaintiff is Asian-American, and at all relevant times Defendant knew Plaintiff to be Asian-American of Korean descent.

63. Upon information and belief, Defendant Skadden Arps is an "employer" for purposes of Title VII.

64. Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

65. Upon information and belief, Defendant Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

66. Defendant Dornfeld's conduct, both to Plaintiff and to his minority co-workers, permeated Plaintiff's work environment with discriminatory harassment.

67. This harassment detrimentally affected Plaintiff, and was sufficiently severe or

pervasive as to alter the terms and conditions of his employment and create a hostile, abusive working environment.

68. The acts complained of herein also constitute a continuing violation because Skadden Arps had notice and knowledge of Defendant Dornfeld's harassment of Plaintiff but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice.

69. Plaintiff reasonably took advantage of preventive and corrective opportunities provided by Skadden Arps by reporting Defendant Dornfeld's discrimination to several supervisors at Skadden Arps, as Skadden Arps had instructed him to do.

70. Skadden Arps failed to exercise reasonable care to prevent and promptly correct Defendant Dornfeld's discriminatory behavior.

71. Defendants' actions constitute discrimination against Plaintiff because of his national origin and race with respect to the terms, conditions, and privileges of his employment, in violation of Title VII.

72. Upon information and belief, Defendants' discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights. Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

73. Any explanation given by Defendants for their conduct is a pretext for national origin and race discrimination.

## SECOND CAUSE OF ACTION
(National Origin and Race Discrimination Under
The New York State Human Rights Law)

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 as if separately set forth herein.

75. At all relevant times, Plaintiff was an "employee" under § 292(6) of the New York State Human Rights Law.

76. Upon information and belief, Defendant Skadden Arps is an "employer" under § 292(5) of the New York State Human Rights Law.

77. Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

78. Upon information and belief, Defendant Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

79. Plaintiff is Asian American, and at all relevant times Defendants knew Plaintiff to be Asian-American of Korean descent.

80. Throughout his employment with Defendant, Plaintiff was qualified for his position, and performed his duties in a professional and competent manner.

81. Defendants discriminated against Plaintiff because of his national origin and race.

82. Defendants' conduct toward Plaintiff constitutes willful discrimination on the basis of national origin and race in violation of § 296 of the New York State Human Rights Law.

83. As a result of Defendants' discriminatory conduct, Plaintiff has suffered substantial damages, including emotional distress, and lost wages and benefits in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
(National Origin and Race Discrimination in
Violation of New York City Human Rights Law)

84. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83 as if separately set forth herein.

85. Plaintiff served a copy of the complaint in this action upon the New York City Commission on Human Rights and New York City Corporation Counsel prior to commencing this action.

86. Plaintiff is a "person" under § 8-102(1) of the New York City Administrative Code.

87. Upon information and belief, Defendants are both an "employer" and "covered entity" subject to the provisions of the New York City Human Rights Law under § 8-102(5) and (17) of the Administrative Code.

88. Defendants violated the New York City Human Rights Law by discriminating against Plaintiff because of his national origin and race in the terms, conditions and privileges of his employment, as described more fully above.

89. As a result of Defendants' unlawful discrimination, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

90. Since Defendants' discriminatory actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's statutory rights, Plaintiff also requests an award of punitive damages under the New York City Human Rights Law

## FOURTH CAUSE OF ACTION
(Retaliation Under Title VII)

91. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 90 as if separately set forth herein.

92. At all relevant times, Plaintiff was an "employee" of Defendant Skadden Arps for purposes of Title VII.

93. Upon information and belief, Defendant Skadden Arps is an "employer" for purposes of Title VII.

94. Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

95. Plaintiff reported the discrimination he faced to Mr. Yaffa, a managing director at Skadden Arps. Such reporting was the proper method for an employee of Skadden Arps in Mr. Jung's position to make a charge of discrimination, or to otherwise oppose unlawful discriminatory practices.

96. Mr. Yaffa failed to take any action following Mr. Jung's complaint and, in fact, criticism of Mr. Jung increased and his performance evaluation scores decreased in the following months, leading to his termination of employment in June 2004.

97. Plaintiff engaged in protected activity under Title VII by (1) personally asserting that he was being discriminated against; and (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

98. Defendants treated Plaintiff differently in retaliation for Plaintiff's reporting Defendants' discriminatory acts.

99. Defendants' actions constitute retaliation against Plaintiff because of his opposition of unlawful employment practices and because of his making a charge of such discrimination, both in violation of Title VII.

100. Upon information and belief, Defendants' retaliatory conduct was taken with

malice and/or reckless indifference to Plaintiff's rights. Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
(Retaliation Under Under The
New York State Human Rights Law)

101.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 100 as if separately set forth herein.

102.   At all relevant times, Plaintiff was an "employee" under § 292(6) of the New York State Human Rights Law.

103.   Upon information and belief, Defendant Skadden Arps is an "employer" under § 292(5) of the New York State Human Rights Law.

104.   Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

105.   Upon information and belief, Defendant Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

106.   Plaintiff engaged in protected activity under the New York State Human Rights Law by (1) personally asserting that he was being discriminated against; (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

107.   By its actions in terminating Plaintiff's employment, Defendants have retaliated against Plaintiff in violation of the New York State Human Rights Law, §296(1)(e).

108.   As a result of Defendants' actions, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be

determined at trial.

### SIXTH CAUSE OF ACTION
(Retaliation Under The New York
City Human Rights Law)

109.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 108 as if separately set forth herein.

110.  Plaintiff is a "person" under § 8-102(1) of the New York City Administrative Code.

111.  Upon information and belief, Defendants are both an "employer" and "covered entity" subject to the provisions of the New York City Human Rights Law under § 8-102(5) and (17) of the Administrative Code.

112.  Plaintiff engaged in protected activity under the New York City Human Rights Law by (1) personally asserting that he was being discriminated against; (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

113.  By its actions in terminating Plaintiff's employment, Defendants have retaliated against Plaintiff in violation of the New York City Human Rights Law, §8-107(7).

114.  As a result of Defendants' actions, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

115.  Defendants' actions were taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York City Human Rights Law.

WHEREFORE, Plaintiff demands judgment as follows:

A.  On the First, Third, Fourth, and Sixth Causes of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at

trial, as well as attorneys' fees, costs and interest, and an Order directing Skadden Arps to cease and desist from its discriminatory practices

  B. On the Second and Fifth Causes of Action, back pay and benefits and front pay and benefits, plus compensatory damages, all in amounts to be determined at trial, as well as costs and interest, and an Order directing Skadden Arps to cease and desist from its discriminatory practices;

  C. Such other and further relief as the Court deems appropriate under the circumstances.

Dated: April 27, 2005
   New York, New York

              BRENDAN CHAO, ESQ.

              By:_____
              Brendan Chao (BC 8811)
              Attorney for Plaintiff
              230 Park Avenue
              New York, New York 10169
              (212) 867-4753