C

Westlaw.

Not Reported in F.Supp.2d

2003 WL 21910867 (S.D.N.Y.)

(Cite as: 2003 WL 21910867 (S.D.N.Y.))

Page 1

c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Marvin BLAKE, Ph.D., Plaintiff,
v.
BRONX LEBANON HOSPITAL CENTER,
Defendant.
**No. 02 Civ. 3827(CBM).**

Aug. 11, 2003.

Former employee brought action against former employer alleging disparate pay and retaliation based on racial or ethnic identity in violation of § 1981 and state law. Employer moved for partial dismissal. The District Court, Motley, J., held that employee failed to allege an ongoing discriminatory policy as required to form the basis for a continuing violation.

Motion granted.

West Headnotes

**Limitation of Actions** ⚷=58(1)
241k58(1) Most Cited Cases
Former employee failed to allege an ongoing discriminatory policy as required to form the basis for a continuing violation in lawsuit against employer alleging disparate pay and retaliation based on race in violation of § 1981 and state civil rights law; although employee alleged acts by employer over years established a pattern and practice of racial discrimination, invoking words of pattern and practice were not enough, and allegations of pay discrimination and discriminatory acts by employer over employee's nine years of

employment were for discrete acts. 42 U.S.C.A. § 1981; McKinney's Executive Law § 290 et seq.

Lee Nuwesra, Jerald G. Abrams, Law Offices of Lee Nuwesra, New York, NY, for Plaintiff.

Ricki E. Roer, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York, NY, for Defendant.

OPINION

MOTLEY, J.

**\*1** Marvin Blake, Ph.D. ("Blake" or "plaintiff"), brings this action against Bronx Lebanon Hospital Center (the "Hospital," "Bronx Lebanon," or "defendant"), where he worked from July 1993 until his employment was terminated on January 18, 2002. Plaintiff claims, *inter alia,* that defendant maintains a regime of disparate salary payment which is predicated upon the racial or ethnic identities of its employees. In the complaint, which was filed on May 17, 2002, plaintiff specifically alleges disparate pay and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"), the New York Executive Law §§ 290 et seq. (the "New York State Human Rights Law" or "NYSHRL"), and the Administrative Code of the City of New York § 8-101 et seq. (the "New York City Human Rights Law" or "NYCHRL"). On August 5, 2002, defendant moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss a number of plaintiff's claims as time-barred. On April 16, 2003, the case was reassigned from the chambers of the late U.S. District Judge Allen G. Schwartz to Judge Deborah A. Batts. On May 22, 2003, the case was transferred to the undersigned. For the reasons stated below, defendant's partial motion to dismiss is hereby GRANTED.

I. BACKGROUND

The facts recited herein are drawn from plaintiff's complaint and are undisputed for the purposes of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 21910867 (S.D.N.Y.)

**(Cite as: 2003 WL 21910867 (S.D.N.Y.))**

Page 2

this motion to dismiss under Rule 12(b)(6).

In July 1993, Bronx Lebanon hired plaintiff, an African American male, as an "Administrator" in its Pathology Department. Plaintiff claims that during his tenure at Bronx Lebanon, he observed that the Hospital maintained a regime of disparate salary payment based on the racial or ethnic identities of its employees. In particular, plaintiff alleges that the Hospital paid white managerial employees higher salaries than black employees with similar backgrounds, qualifications and work responsibilities. Plaintiff alleges that defendant assigned white employees job titles which reflect higher status and greater prominence at the Hospital than those assigned to black employees. Plaintiff makes the uncontroversial assertion that job titles at the Hospital reflect a hierarchy among the workforce. He claims that defendant's allegedly discriminatory job title assignment practices generate a regime in which black managerial employees achieve lower levels of prominence than their white colleagues at the firm. Whereas a given job title in the Hospital's workforce hierarchy correlates with a given level of pay, plaintiff claims that a principal concomitant of the allegedly discriminatory status assignment regime is that black managerial employees receive lower salaries than their white colleagues, notwithstanding the fact that they have similar qualifications, backgrounds and job responsibilities. While decrying the systemic nature of the alleged discriminatory conduct, plaintiff brings this case on behalf of himself alone-this is not a "pattern and practice" class action suit.

**\*2** Plaintiff alleges that when defendant first hired him, the responsibilities which inhered in his position were identical to those of his immediate predecessor, a white male. Whereas plaintiff was assigned the job title of "Laboratory Administrator," however, his predecessor held the position of "Director of Clinical Laboratories." In addition, plaintiff claims that his salary at the time of his hiring ($75,000.00) was approximately half of that of his white predecessor, "despite the fact that Plaintiff's position and responsibilities had been expanded and his qualifications were similar to

those of his predecessor." Pl.'s Complt. at 16. Plaintiff claims that after he learned of this difference between his salary and that of his predecessor, he contacted senior management personnel at the Hospital--in particular, a person identified in the complaint as Dr. Choi, the Director of Pathology--and requested an "equitable salary adjustment." *Id.* at 17. In addition, plaintiff requested that his job title and position "be changed to incorporate and represent his qualifications and expanded responsibilities and duties." *Id.* at 18. In particular, plaintiff requested that his job title be changed to one which reflected a status comparable to that of his white male predecessor, the "Director of Clinical Laboratories." Plaintiff's requests were denied. Plaintiff alleges that senior management at the Hospital, specifically Mr. Sheldon Ortsman, Vice President of Administration and Human Resources, repeatedly refused to promote him, change his job title or make what plaintiff considered to be equitable salary adjustments. These personnel decisions, plaintiff claims, were the product of a plan, practice and custom through which defendant discriminated against black employees.

According to plaintiff, in 1997 he was appointed "to oversee and direct the Pathology and Radiology Departments" at the Hospital. *Id.* at 24. In this capacity, plaintiff was assigned the job title of "Administrative Director of Pathology and Radiology." Plaintiff alleges that with his additional responsibilities, he ought to have been named "Assistant Vice President" and granted a corresponding substantial salary increase. He suggests that but for the fact that he is an African American, he would have been assigned this more impressive title and received the correlating pay increase.

Plaintiff alleges that in June 2001, he was assigned additional duties and responsibilities which were "independent of and not related to his position" as Administrative Director of Pathology and Radiology. *Id.* at 26. Much to plaintiff's consternation, defendant did not assign him a new job title or grant him a salary increase. Plaintiff claims that when he requested that he be promoted,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 21910867 (S.D.N.Y.)

**(Cite as: 2003 WL 21910867 (S.D.N.Y.))**

receive a new job title, and receive a salary increase reflective of his new activities--presumably around the time that he was assigned these new duties in June 2001--Mr. Ortsman denied his requests. Indeed, plaintiff claims that defendant denied his requests notwithstanding the recommendations of "independent consultants hired by defendant, concurring with Blake's promotional requests." *Id.* 28.

**\*3** Plaintiff claims that thereafter he again complained to defendant's senior management about what he perceived as defendant's preferential treatment of white managers. Plaintiff claims that after he made this complaint--in retaliation for making this and other complaints regarding race-based discrimination with reference to promotions, assignment of job titles, and salary levels--Mr. Ortsman terminated his employment at the Hospital. Plaintiff claims that Mr. Ortsman told him that his termination was not based upon his job performance, which he characterized as "outstanding." *Id .* at 31. Rather, Mr. Ortsman informed him that the position of "Administrative Director of Pathology and Radiology," which plaintiff held, was being eliminated. Plaintiff requested that, in light of his seniority and qualifications, he be granted the opportunity to assume the administrative position of Pathology "Manager." Plaintiff asserts that this request is "consistent with defendant's Human Resources Policy and past practices of non-union staff reduction." *Id.* at 32. Plaintiff claims that his request was denied. He asserts that the person in the position of "Manager," a white male with less seniority than plaintiff, was not as qualified as plaintiff for the position.

Plaintiff believes that his termination was rooted in defendant's regime of race-based discrimination in hiring, promoting, and paying managerial employees. Plaintiff believes that his employment was terminated in retaliation for his complaints about race-based status and pay disparities and in retaliation for his repeated requests to be given the same job title and salary as his white colleagues, with whom he believes he was similarly situated in all relevant respects. *Id.* at 63.

## II. STANDARD OF REVIEW

A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." ' *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45- 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering the sufficiency of the pleadings, the court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The issue to be resolved by the court at this stage is "whether or not the plaintiff is entitled to present evidence in support of the allegations in his or her complaint." *Bernstein v. MONY Group, Inc.,* 228 F.Supp.2d 415, 417 (S.D.N.Y.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

"[A]n employment discrimination complaint ... must contain only a 'short and plain statement of the claim showing the pleader is entitled to relief." ' *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting Fed.R.Civ.P. 8(a)(2)). In order to survive a motion to dismiss, "[a]n employment discrimination plaintiff need not plead a prima facie case of discrimination," *id.* at 999, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1, and must only " 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' *Id.* (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99, 2 L.Ed.2d 80).

## III. Analysis

**\*4** Defendant moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss as time-barred claims in plaintiff's complaint which are premised upon acts which occurred prior to May 20, 1999. In New York, Section 1981 claims are subject to a three-year statute of limitations. *See, e.g., Wilson v. Fairchild Republic Co., Inc.,* 143 F.3d 733, 738 n. 5 (2d Cir.1998) (statute of limitations of federal civil rights cases is three years, including Section 1981 claims); *Bailey v. Colgate-Palmolive,* 2003

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

2003 WL 21910867 (S.D.N.Y.)

**(Cite as: 2003 WL 21910867 (S.D.N.Y.))**

WL 21108325 at *10 (S.D.N.Y. May 14, 2003). The claims brought under the New York Executive Law and the New York City Administrative Code are likewise subject to a three-year statute of limitations. *See Charles v. New York City Police Dept.,* 1999 WL 717300 (S.D.N.Y. Sept.15, 1999) (citing *Lambert v. Genesee Hosp.,* 10 F.3d 46, 59 (2d Cir.1993)); *Lightfoot v. Union Carbide Corp., 110 F.3d 898,* 906 (2d Cir.1997). Whereas plaintiff filed the complaint in this case on May 20, 2002, defendant argues that any claims premised upon acts which occurred prior to May 20, 1999 are untimely and must be dismissed.

Considering the complaint in a light most favorable to plaintiff, it appears that he was aware of actions which are the basis of some his claims as early as 1993 and certainly by 1997. Indeed, plaintiff requested that his first job title, "Laboratory Administrator," be changed to include the word "Director" (and that he receive an appropriate pay increase) sometime after he was hired in 1993 and before he became "Administrative Director" in 1997. In June 2001, plaintiff was given additional duties and responsibilities, but not an accompanying pay increase. He requested a promotion sometime thereafter; the request was denied.

"The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996) (citing *Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992)). Conscious of this limitation, plaintiff asserts that the retaliation and disparate pay and status assignment regime of which he complains were products of an ongoing "pattern or practice" of discrimination at the Hospital. *See* Pl.'s Mem. of Law at 2. He concludes that all the actions of which he complains, including those which occurred before May 20, 1999, are within the relevant statute of limitations because "pattern and practice claims can still form the basis of a continuing violation." *Id.*

To begin, the court notes that neither plaintiff nor defendant directly addresses the issue of the applicability of the continuing violations doctrine, which has existed in this Circuit in the context of *Title VII claims,* to plaintiff's Section 1981 and state and city law claims. Without explanation or citation, plaintiff assumes that the doctrine applies to Section 1981 claims. Defendant, without explanation or citation, assumes that the Supreme Court's analysis in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)--a case that addressed, *inter alia,* the issue of time bar in the context of a *Title VII claim*--applies to plaintiff's Section 1981 claim. In order to address the parties' arguments, the court should touch upon the issue of the intersection of the Court's decision in *Morgan* and plaintiff's claims.

**\*5** In the context of a Title VII claim, courts in this Circuit have previously recognized a narrow exception to the limitations period when an otherwise time-barred claim is part of a "continuing violation." *See Lambert,* 10 F.3d at 53. The doctrine has generally been limited to situations where a specific discriminatory policy or mechanism has been alleged. *See Van Zant,* 80 F.3d at 713. Plaintiffs could invoke the continuing violation doctrine if they could provide "proof of specific or ongoing policies or practices or ... specific and related instances of discrimination [which] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). If a continuing violation is established, "all claims of discrimination under [the discriminatory policy] will be timely even if they would be untimely standing alone." *Lambert,* 10 F.3d at 53. As "a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." *Curtis et. al. v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y.2000) (citing *Rose v. Port Auth. of N.Y. and N.J.,* 13 F.Supp.2d 516, 520 (S.D.N.Y.1998)).

The Supreme Court recently explained in *Morgan,* with reference to a claim under Title VII, that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.... Each incident of

Not Reported in F.Supp.2d                                                                    Page 5

2003 WL 21910867 (S.D.N.Y.)

**(Cite as: 2003 WL 21910867 (S.D.N.Y.))**

discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice." ' *Morgan,* 122 S.Ct. at 2072-73. "Termination, failure to promote, denial of transfer, or refusal to hire" are all discrete acts. *Id.* at 2072. The Court did not address "pattern or practice" claims, which "presumably can still form the basis of a continuing violation." *Gross v. National Broadcasting Company, Inc.,* 232 F.Supp.2d 58, 68 (S.D.N.Y.2002) (citing *Morgan,* 122 S.Ct. at 2073 n. 9). The court in *Gross* observed, though, that the Supreme Court made clear that "there is no indication that the term "practice" as used in Title VII 'converts related discrete acts into a single unlawful practice for the purposes of timely filing." ' *Id.* (quoting *Morgan,* 122 S .Ct. at 2071).

Defendant, assuming that the Court's pronouncements in *Morgan* with respect to Title VII apply in this matter, concludes that each incident of which plaintiff complains is a discrete act which cannot contribute to a continuing violation. Accordingly, defendant contends that claims premised on acts which occurred before May 20, 1999 are time barred. By contrast, plaintiff contends that the disparate pay which resulted from the allegedly discriminatory status assignment regime was part of an ongoing "pattern and practice" of discrimination. While plaintiff uses the words "pattern and practice" in its complaint, the court is not convinced that plaintiff has truly pleaded a "pattern and practice" claim which might still form the basis of a continuing violation after *Morgan.* Indeed, the court doubts that a plaintiff can bring a "pattern and practice" claim in a non-class action complaint. *See, e.g., Foster-Bey v. Henderson,* 2000 WL 6203311 at *1 n. 1 (D.Conn. April 7, 2000); *Calebritto v. Dillon,* 920 F.Supp. 370, 378 (E.D.N.Y.1996); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 866 n. 6 (7th Cir.1985) (pattern and practice argument seems to be misplaced in non-class suits); *N.A.A .C.P. Labor Committee of Front Royal, Va. v. Laborers Intern.,* 902 F.Supp. 688, 611- 12 (W.D.Va.) (suggesting that pattern or practice theory is not appropriate in private, non-class action). In any event, a plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words "pattern" or "practice." *See Gross,* 232 F.Supp.2d at 68 (citing *Morgan* at 2071).

\*6 In *Staff v. Pall Corp.,* 233 F.Supp.2d 516, 526 (S.D.N.Y.2002), Judge Berman observes that "[t]he parties' failure to distinguish between the various statutes notwithstanding, there is ample justification to extend the reasoning of *Morgan* to Plaintiff's § 1981 and state law claims." The court agrees. The Supreme Court and the Second Circuit have addressed in identical fashion substantive issues arising under Title VII and Section 1981. *Id.* at 527 (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Hawkins v. 115 Legal Service Care,* 163 F.3c 684, 693 (2d Cir.1998)). *See also Everson v. New York City Transit Auth.,* 216 F.Supp.2d 71, 79 (E.D.N.Y.2002) (continuing violation doctrine applies to both Title VII and Section 1981). "Because the primary difference between the two statutes pertains to the breadth of protected classes, employees covered, and the statutes of limitations, rather than to the substantive elements of a claim ... it follows that the distinction drawn in *Morgan* between hostile work environment claims and claims of discrete acts" applies in the context of a Section 1981 claim. *Staff,* 233 F.Supp.2d at 527.

Moreover, as the court observes in *Staff,* the similarity between the New York State Human Rights Laws and the federal employment discrimination laws suggests that "the reasoning of *Morgan* with respect to the continuing violation exception should apply to claims brought under the NYSHRL as well." *Id.* at 528. The court finds the reasoning in *Staff* to be persuasive and equally applicable to the City Human Rights Laws. Accordingly, the court likewise concludes that the Court's reasoning with respect to the time-bar issue in *Morgan* is applicable to the Section 1981 and state and city law claims in this case.

The Second Circuit has noted that
a claim of discriminatory pay is fundamentally unlike other claims of ongoing discriminatory treatment because it involves a series of discrete, individual wrongs rather than a single and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 21910867 (S.D.N.Y.)

**(Cite as: 2003 WL 21910867 (S.D.N.Y.))**

indivisible course of wrongful action. As the Supreme Court explained in *Bazemore v. Friday* [478 U.S. 385, 395-96 (1986) ], characterizing the harm imposed by a racially discriminatory pay scale, "Each week's paycheck that delivers less to a [disadvantaged class member] than to a similarly situated [favored class member] is a wrong under Title VII, regardless of the fact that the pattern was begun prior to the effective date" of limitation.
*Pollis v. New Sch. for Social Research,* 132 F.3d 115, 119 (2d Cir.1997) (quoting *Bazemore v. Friday,* 478 U.S. 385, 395-96, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). *See also Meckenberg v. New York City Off-Track Betting,* 42 F.Supp.2d 359, 371 (S.D.N.Y.1999) ("recurring pay discrimination does not constitute a continuing violation, as each receipt of a paycheck is the basis for a separate cause of action for which suit must be brought within the limitations period"); *Quarless v. Bronx-Lebanon Hosp. Ctr.,* 228 F.Supp.2d 377, 383 n. 2 (S.D.N.Y.2002) (holding that, in light of *Morgan, Pollis* applies to Title VII claims); *Gross,* 232 F.Supp. at 67 (noting that *Morgan,* "which states that alleged failures to compensate adequately ... cannot form the basis for a continuing violation claim," is in accord with *Pollis* ).

**\*7** Here, plaintiff claims that he was paid less and received less impressive job titles than his predecessor and other similarly situated white managerial employees at the Hospital. Again, in *Morgan,* the Court identified the following discrete employment actions which are not subject to the continuing violation exception: termination, failure to promote, denial of transfer, or refusal to hire. *See Morgan,* 122 S.Ct. 2072-73. As Judge Scheindlin observes in *Gross,* the holding in *Morgan* is in accord with Second Circuit law "which states that alleged failures to compensate adequately, transfers, job assignments, and promotions cannot form the basis for a continuing violation claim." 232 F.Supp. at 68 (citing, e.g., *Pollis,* 132 F.3d 115, 119 (2d Cir.1997)). *See also Crosland v. City of New York,* 140 F.Supp.2d 300, 308 (S.D.N.Y.2001) ("It is well-settled that transfers, demotions, failure to compensate adequately, and failure to promote are discrete acts which do not constitute a continuing

violation"). Similarly, the Second Circuit has held that the denial of an increased pay grade does not amount to a continuing violation. *Lambert,* 10 F.3d at 53. *See also Quarless,* 228 F.Supp.2d at 382 (rejecting argument that disparate pay was part of an ongoing pattern and practice of discrimination, observing that "[b]ecause each paycheck that the Plaintiff received was an (alleged) immediate and individual wrong which gave rise to a separate disparate pay claim, the plaintiff cannot use the continuing violation doctrine"). Plaintiff cannot avail himself of the continuing violation doctrine in order to render timely any disparate pay allegations which occurred outside of the three year statute of limitations. *Id.* (citing *Morgan,* 122 S.Ct. at 2072). In light of the foregoing, plaintiff's promotion and salary claims brought after May 20, 1999 are time-barred.

Similarly, the discrete acts of retaliation alleged in the complaint cannot be saved by the continuing violation exception. *See Morgan,* 122 S.Ct. at 2073 ("[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' ' which must be alleged in a claim filed "within the appropriate time period"); *Coffey v. Cushman & Wakefield,* 2002 WL 1610913 (S.D.N.Y.2002) (Koetl, J.) (the "statute of limitations ... begins to run when each discrete and retaliatory act occurs, including each unlawful termination, denial of transfer ... or other related acts that discriminate"). Accordingly, retaliation claims brought after the applicable statute of limitations are time-barred.

In light of the foregoing, defendant's partial motion to dismiss is hereby GRANTED.
  SO ORDERED.

2003 WL 21910867 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02cv03827  (Docket)
                          (May. 20, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

D

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 1

2002 WL 1796812 (E.D.N.Y.)

**(Cite as: 2002 WL 1796812 (E.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Carleen GREENIDGE, Plaintiff,
v.
BEN HUR MOVING & STORAGE, INC., Big Ben
Van Lines a/k/a Big Ben Van Lines,
Inc., Ben Hur Relocations a/k/a Ben Hur Relocation
Services, Inc., Ben Hur Los
Angeles a/k/a Ben Hur Los Angeles, Inc., and Alon
Modlin, Defendants.
**No. 02-CV-1635 (ERK).**

Aug. 6, 2002.

Former employee filed Title VII action alleging
that employer had discriminated against her on
basis of her race and gender and retaliated against
her for her previous complaints of discrimination.
On employer's motion for summary judgment, the
District Court, Korman, Chief Judge, held that suit
was untimely.

Motion granted.

West Headnotes

**[1] Civil Rights** ⟜1530
78k1530 Most Cited Cases
Limitations period for former employee to bring
Title VII action began to run as soon as her counsel
received actual notice of issuance of right-to-sue
letter by Equal Employment Opportunity
Commission (EEOC). Civil Rights Act of 1964, §
706(f)(1), as amended, 42 U.S.C.A. § 2000e-5(f)(1).
Peter J. Pike, Pike & Pike, P.C., Bellmore, NY, for
plaintiff.

Gil Santamarina, Santamarina & Assocs., New
York, NY, for defendants.

**MEMORANDUM & ORDER**

KORMAN, Chief Judge.

*1 Plaintiff, Carleen Greenidge, alleges that she
was employed as a salesperson by defendants Ben
Hur Moving & Storage, Inc., Big Ben Van Lines
a/k/a Big Ben Van Lines, Inc., Ben Hur Relocations
a/k/a Ben Hur Relocation Services, Inc., Ben Hur
Los Angeles a/k/a Ben Hur Los Angeles, Inc. and
Alon Modlin from May 15, 2000 until January 4,
2001, when her employment was terminated.
(Compl.¶ 15.) Modlin is allegedly the president of
some or all of the corporate defendants. (*Id.* ¶ 7.)

On February 9, 2001, plaintiff filed a charge of
discrimination against defendants with the Equal
Employment Opportunity Commission ("EEOC"),
alleging that defendants had discriminated against
her on the basis of her race and gender and
retaliated against her for her previous complaints of
discrimination, all in violation of Title VII of the
Civil Rights Act of 1964. (Compl. ¶ 12; Pike
Affirmation Ex. 3.) On June 7, 2001, the EEOC
issued a right-to-sue letter dismissing plaintiff's
charge and notifying her that she could pursue her
Title VII claims by filing a lawsuit within 90 days
of her receipt of the letter. (Compl. ¶ 12;
Santamarina Affirmation Ex. G.) The right-to-sue
letter, which was addressed to plaintiff and copied
to counsel for defendants, explained that the
dismissal was based on the ground that there existed
"[n]o employee-employer relationship" between the
parties. (Santamarina Affirmation Ex. G.)

Plaintiff alleges in her complaint that she never
received the EEOC's right-to-sue letter. (Compl.¶
12.) Plaintiff has also submitted an affidavit in
which she states: "At no time did I or anyone else
residing [at my address] ever receive a copy of [the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 1796812 (E.D.N.Y.)

(Cite as: 2002 WL 1796812 (E.D.N.Y.))

right-to-sue letter] from the EEOC." (Greenidge Aff. ¶ 4.) Counsel for defendants, on the other hand, did receive a copy of the right-to-sue letter by mail shortly after it was issued on June 7, 2001. (Santamarina Affirmation ¶ 19 & Ex. G.) The postage-meter stamp on the envelope addressed to counsel for defendants indicates that the EEOC mailed the letter on June 7, 2001. (Id. at Ex. G.)

By letter dated September 10, 2001, counsel for plaintiff requested that the EEOC issue a right-to-sue letter with respect to plaintiff's charge of discrimination. (Pike Affirmation ¶ 15 & Ex. 2.) Counsel for plaintiff's September 10, 2001 letter was presumably lost as a result of the destruction of the EEOC's offices in the World Trade Center on September 11, 2001; in any event, the EEOC never responded to it. (Id. at ¶¶ 15-16.) By letter dated November 7, 2001, counsel for plaintiff sent the EEOC copies of all the documents previously submitted with respect to plaintiff's charge in order to replace those documents lost on September 11, 2001. (Id. at ¶ 16 & Ex. 3.) By the same letter, counsel for plaintiff also requested for a second time that the EEOC issue a right-to-sue letter. (Id.)

In the complaint and motion papers, counsel for plaintiff obfuscated the history of its communications with the EEOC following its November 7, 2001 request for the issuance of a right-to-sue letter. Neither the complaint nor plaintiff's affidavit sheds any light on the timing or content of those communications. One of the attorneys at the law firm representing plaintiff refers in his affirmation to the November 7, 2001 request and then states only that sometime "[t]hereafter" his firm received notice that the EEOC had issued a right-to-sue letter. In another part of his affirmation he states: "While affirmant does possess a copy [of the right-to-sue letter], that copy was not received through my client, but from directly from [sic ] the EEOC at my office's request."

*2 Pursuant to an inquiry from my chambers, I was informed by letter dated July 25, 2002 that the law firm representing plaintiff was in possession of "an inter-office memo[randum], dated January 8, 2002[,] which noted that this firm was advised by

the EEOC in a letter dated late November, 2001 that plaintiff was issued a Notice of Right to Sue on June 7, 2001." The July 25, 2002 letter also stated that a copy of the EEOC letter could not be located, and that "[a]ll I can surmise is that this office received such a letter between sometime in November, 2001 and January 8, 2002." By order dated July 25, 2002, counsel for plaintiff was directed to bring a copy of its January 8, 2002 inter-office memorandum to the hearing on defendants' motion to dismiss. At the hearing, counsel for plaintiff provided me with a copy of the EEOC letter that it had previously been unable to locate. In that letter, which was dated November 14, 2001, the EEOC informed counsel for plaintiff that it had dismissed plaintiff's charge of discrimination and sent her a right-to-sue letter by certified mail on June 7, 2001. The EEOC also stated that it could not provide counsel for plaintiff with a copy of the right-to-sue letter, since it had lost all of its files as a result of the destruction of its offices on September 11, 2001.

On March 15, 2002, plaintiff filed the complaint in this action, claiming that defendants discriminated and retaliated against her in violation of Title VII, the New York State Human Rights Law and the Administrative Code of the City of New York. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Because I consider matters outside the pleadings in my disposition of this motion, I treat it as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Fed.R.Civ.P. 12(b).

DISCUSSION

Section 2000e-5(f)(1) of Title VII provides in pertinent part:

If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved ....

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 1796812 (E.D.N.Y.)

**(Cite as: 2002 WL 1796812 (E.D.N.Y.))**

42 U.S.C. § 2000e-5(f)(1). The EEOC has promulgated regulations that implement the notice requirement of § 2000e-5(f)(1). *See* 29 C.F.R. § 1601.28. The regulations provide that "[w]here the Commission has dismissed a charge ... it shall issue a notice of right to sue ... to ... [t]he person claiming to be aggrieved ...." § 1601.28(b)(3). The notice of right to sue (more commonly referred to as a right-to-sue letter) must include an "[a]uthorization to the aggrieved person to bring a civil action ... within 90 days from the receipt of such authorization" and "[a]dvice concerning the institution of such civil action by the person claiming to be aggrieved." § 1601.28(e).

*3 There is a presumption that the EEOC mails a right-to-sue letter to the claimant on the date of its issuance, *i.e.*, the date shown on the letter. *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir.1996). There is also a presumption that the claimant receives the right-to-sue letter three days after its mailing. *Id.* at 525. However, neither of these presumptions is irrebutable. *Id.* at 526. "If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." *Id.* Similarly, an affidavit by the claimant stating that she never received the right-to-sue letter sent by the EEOC may rebut the presumption of receipt. *See Williams v. Manhattan East Suite Hotels*, No. 98 Civ. 6825, 1999 WL 212690, at *2-*3 (S.D.N.Y. Apr.12, 1999) (Chin, J.) (plaintiff's sworn statement that post office never notified him of its attempt to deliver certified right-to-sue letter rebutted presumption of receipt, where other circumstances suggested error by post office).

Where the claimant is represented by counsel, the 90-day limitations period for bringing a Title VII action begins to run on the date that the right-to-sue letter is first received either by the claimant or by her counsel. *Josiah-Faeduwor v. Communications Satellite Corp.*, 785 F.2d 344, 346-47 (D.C.Cir.1986) (per curiam); *Ringgold v. Nat'l Maintenance Corp.*, 796 F.2d 769, 770 (5th

Cir.1986) (per curiam); *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir.1984) (per curiam); *Gonzalez v. Stanford Applied Eng'g, Inc.*, 597 F.2d 1298, 1299 (9th Cir.1979) (per curiam); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (30-day limitations period specified in § 2000e-16(c) for bringing of Title VII action against Federal Government begins to run upon receipt of right-to-sue letter by claimant or her counsel).

The Sixth Circuit has held that the 90-day limitations period for bringing a Title VII action begins to run as soon as the claimant's counsel receives actual notice of the issuance of a right-to-sue letter by the EEOC. *See Ball v. Abbott Adver., Inc.*, 864 F.2d 419, 421 (6th Cir.1988). The claimant in *Ball* did not receive the right-to-sue letter mailed to her by the EEOC in February 1984, because she had failed to notify the EEOC of her change of address. *Id.* at 420. One month later, in March 1984, the claimant's counsel telephoned the EEOC and learned that the right-to-sue letter had been issued and returned as undeliverable. *Id.* The claimant's counsel requested that the EEOC send the claimant another copy of the letter at her new address. *Id.* Five months later, in August 1984, the EEOC sent another copy of the letter to the claimant, who subsequently commenced the action. *Id.* The Sixth Circuit held that the claimant's action was time-barred, because there was "no question that in March of 1984 [she had] received actual notice, through counsel, that the EEOC had issued the right-to-sue letter." *Id.* at 421. *See also Colquett v. Rockford Register Star*, No. 00 C 50215, 2001 WL 699933, at *1 (N.D.Ill. June 21, 2001) (90-day limitations period began to run when claimant's counsel was informed that EEOC had issued right-to-sue letter to claimant).

*4 The Sixth Circuit's holding in *Ball* is consistent with both the letter and the spirit of § 2000e-5(f)(1) and the EEOC regulations. Section 2000e-5(f)(1) requires only that the EEOC "notify" the claimant of its dismissal of a charge of discrimination. The regulations, it is true, require that the notice contain certain additional information, including an "[a]uthorization ... to bring a civil action ... within

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2002 WL 1796812 (E.D.N.Y.)

**(Cite as: 2002 WL 1796812 (E.D.N.Y.))**

90 days from the receipt of such authorization" and "[a]dvice concerning the institution of such civil action." 29 C.F.R. § 1601 .28(e). However, the information contained in the notice is clearly intended to be for the benefit of a claimant lacking legal representation. Where, as in *Ball,* the EEOC notifies the claimant's attorney that it has dismissed the charge of discrimination and issued the required notice to the claimant, there is simply no rational basis for holding that the 90-day limitations period does not begin to run. *See Ball,* 864 F.2d at 421 ("The courts are not required to proceed as if no such notice had been given, [claimant's] lawyer having sworn in an affidavit that he knew it had been.").

Here, I need not decide whether plaintiff has successfully rebutted the presumption that she received the right-to-sue letter on June 10, 2001, three days after the EEOC sent it to her by certified mail. *See Sherlock,* 84 F.3d at 525. Even assuming that plaintiff's statement that she never received the letter is sufficient, standing alone, to rebut this presumption, her action is nonetheless time-barred because she failed to file her complaint within 90 days of receiving actual notice, through counsel, that the EEOC had issued a right-to-sue letter. *See Ball,* 864 F.2d at 421. After much obfuscation, at the hearing on this motion counsel for plaintiff provided me with a copy of a letter, dated November 14, 2001, that it had received from the EEOC. In that letter the EEOC informed counsel for plaintiff that it had dismissed plaintiff's charge of discrimination and sent her a right-to-sue letter by certified mail on June 7, 2001. Notwithstanding this unequivocal notice, plaintiff did not bring this action until four months after the EEOC's November 14, 2001 letter. Because plaintiff was unable to offer any explanation, either in the motion papers or at the hearing, for her failure to bring this action within the 90-day limitations period, her Title VII claims must be dismissed.

## CONCLUSION

Defendants' motion to dismiss plaintiff's Title VII claims, which is treated as a motion for summary judgment, is granted. Plaintiff's state law claims are dismissed without prejudice.

SO ORDERED.

2002 WL 1796812 (E.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02cv01635  (Docket)
(Mar. 15, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E

Westlaw.

Not Reported in F.Supp.2d

2000 WL 1222014 (N.D.N.Y.)

(Cite as: 2000 WL 1222014 (N.D.N.Y.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Daniel R. IZZO, Plaintiff,
v.
CITY OF SYRACUSE; the Assessor of Syracuse;
And the Director of the Division of
Code Enforcement of Syracuse, Defendants.
**No. 98-CV-0778 FJS GLS.**

Aug. 3, 2000.
Daniel R. Izzo, Plaintiff, pro se, Syracuse, for the
Plaintiff.

City of Syracuse Corporation, Counsel, Syracuse,
John G. Stone, Esq., of Counsel, for the Defendants.

*DECISION and ORDER*

SCULLIN, Chief J.

*I. Background*

**\*1** This action was filed by Daniel Izzo ("plaintiff"
or "Izzo") on May 14, 1998. In his complaint,
plaintiff claims that the defendants violated his
rights under the Fourth, Fifth, Eighth and
Fourteenth Amendments to the United States
Constitution. Specifically, Izzo contends that
defendant City of Syracuse ("City") has engaged in
unconstitutional practices relative to, *inter alia,* the
assessment of taxes and code enforcement relating
to housing owned by plaintiff. The City is alleged
have over-valued several of Izzo's properties, and
consequently levied excessive property taxes on
such parcels. *See* docket no. 1.

Plaintiff filed his first application for injunctive

relief soon after filing his complaint, which was
denied by the undersigned. After filing an
unsuccessful appeal of such Order, Izzo filed a
motion to amend his complaint. Such motion was
denied by Magistrate Judge Gary L. Sharpe during a
pretrial conference, without prejudice to plaintiff
renewing same. Izzo filed a new motion to amend
on May 20, 1999, docket no. 24, accompanied by a
proposed amended complaint ("Proposed Am.
Compl."). Such motion was opposed by the
defendants, *see* docket no. 25.

On November 9, 1999, plaintiff filed his second
request for a temporary restraining order, *see* docket
no. 29.

By Order filed December 17, 1999, Magistrate
Judge Sharpe advised the parties that defendants'
objections to the motion to amend would be treated
by the Court as a cross-motion to dismiss the
complaint. *See* docket no. 30. Such Order also
afforded the parties thirty (30) days within which to
submit additional memoranda in support of their
respective positions. *Id.* Both parties submitted
additional briefs in response to such Order. Docket
nos. 32 and 33.

By Order and Report-Recommendation filed
March 31, 2000 (docket no. 34)
("Report-Recommendation"), Magistrate Judge
Sharpe denied Izzo's motion to amend and
recommended that what the Court considered as
defendants' cross-motion to dismiss plaintiff's
complaint be granted. Objections to such
Report-Recommendation were filed by Izzo on
April 10, 2000, along with, *inter alia,* an in forma
pauperis application. Docket nos. 35 and 36. [FN1]

> FN1. For the sake of clarity and
> convenience, the Court will refer to the
> complaint filed, as well as the proposed
> amended complaint submitted by plaintiff
> along with his motion to amend,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

collectively as Izzo's "pleadings."

II. Discussion

A. Legal standards

In considering a motion to amend, Fed.R.Civ.Proc. 15(a) requires that leave to amend "shall be freely given when justice so requires ." Fed. R. Civ. Proc. 15(a); *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). However, as has been recently noted in this District, such leave is not automatic. A motion to amend should be denied:

> [F]or good cause "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.

*Evac, LLC v. Pataki,* 89 F.Supp.2d 250, 261 (N.D.N.Y.2000) (McAvoy, C.J.) (quoting *Foman,* 371 U.S. at 182)). That Court continued:

> *2 An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. *Lamb v. Henderson,* 1999 WL 596271, at *2 (S.D.N.Y. Aug. 9, 1999) (*citing S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979)). A court, therefore, is justified in denying an amendment that could not withstand a motion to dismiss. *Id.* (internal citations omitted); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (where granting leave to amend is unlikely to be productive it is not an abuse of discretion to deny leave to amend).

*Evac, LLC,* 89 F.Supp.2d at 261-62.

As to the standard the undersigned must utilize in determining the propriety of the cross-motion to dismiss, "in ruling on a 12(b)(6) motion, a court is required to accept the material facts alleged in the complaint as true, and not to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Easton v.. Sundram,* 947 F.2d 1011, 1014-15 (2d Cir.1991) (citations and internal

quotation marks omitted).

In the present action, the defendants object to Izzo's motion to amend, arguing that the proposed amendments are futile. Specifically, the defendants argue that (i) the proposed amendments are duplicative of those contained in plaintiff's original complaint; (ii) this Court lacks jurisdiction over such claims and (iii) Izzo fails to state claims upon which relief may be granted in his pleadings

In issuing his Report-Recommendation relative to the outstanding motions, the Magistrate Judge categorized the various causes of action alleged by plaintiff. As none of the parties objected to the Magistrate Judge's analysis and parsing of Izzo's claims, and such approach correctly identifies the claims before the Court relative to the pending motions, the undersigned will adopt this same approach in analyzing the instant motions. [FN2]

> FN2. The Court notes that plaintiff's pleadings are substantially the same. In fact, many of the allegations contained in the proposed amended complaint are photocopies of the allegations asserted in the original complaint. The undersigned will address the differences between such pleadings as warranted.

Finally, the Court notes that it must review *de novo* those issues upon which Izzo has raised specific objections to Magistrate Judge Sharpe's Report-Recommendation. 28 U.S.C. § 636(b)(1); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989).

B. Plaintiff's claims

(i) Tax assessment claims.

Izzo's first cause of action alleges that the defendants violated plaintiff's rights to Due Process of Law by "illegally and fraudulently over assess[ing]" certain of Izzo's properties. Compl. at ¶ 5, Proposed Am. Compl. at p. 6. Plaintiff contends that the values of these properties have been wrongfully valued by the City at between ten (10) to sixteen (16) times their purchase price. *Id* .

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

Such conduct is alleged by Izzo to be a deprivation of his property without just compensation, and a means by which the City obtains property from its citizens at tax auctions for bargain prices.

Defendants argue, *inter alia,* that such claims are barred by the Tax Injunction Act, 28 U.S.C. § 1341. Magistrate Judge Sharpe agreed with such argument, and recommended dismissing this claim on such basis. Report-Recommendation at pp. 8-13.

*3 The Tax Injunction Act provides:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.... This statutory text is to be enforced according to its terms and should be interpreted to advance its purpose of confining federal-court intervention in state government.

*Jefferson County, Ala. v. Acker,* 527 U.S. 423, 433 (1999) (citations omitted).

Federal courts are precluded from exercising jurisdiction over challenges to state tax assessments, [FN3] regardless of the type of relief sought. *Bernard v. Village of Spring Valley, N.Y.,* 30 F.3d 294, 297 (2nd Cir.1994). While this Act prevents federal courts from giving *injunctive* or *declaratory* relief, the principle of comity prevents a taxpayer from seeking *damages* in a § 1983 action if a plain, speedy, and efficient remedy may be had in state court. *Bernard,* 30 F.3d at 297.

> FN3. This Act applies not only to the collection of *state* taxes, but also to the collection of *local, municipal* taxes as well. *VJG Realty Corp. v. City of New York,* 1990 WL 80036, *2 (S.D.N.Y. June 7, 1990) (citation omitted).

Because plaintiff seeks both injunctive relief and substantial monetary damages herein, the Court must look to both the Tax Injunction Act and principles of comity in determining whether this claim must be dismissed. [FN4]

> FN4. Principles of comity also bar

taxpayers from asserting § 1983 actions against the validity of state tax systems in federal courts. *Id.* (citing *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 116 (1981)).

Critical to the issue of whether the Tax Injunction Act applies to a given case is whether a "plain, speedy and efficient" remedy exists. As Judge Lawrence E. Kahn has recently noted:

An "adequate" state remedy has not been construed to mean a "perfect" one; indeed, § 1341 will require federal abstention in favor of an adequate state remedy even if that remedy is less satisfactory than the remedy available in federal court. The remedy must, however, be reasonably "certain" before the [Tax Injunction Act] may be invoked.

*United Food and Commercial Workers Unions and Food Employees Benefit Fund v. DeBuono,* 101 F.Supp.2d 74, 2000 WL 913937 (N.D.N .Y. Mar. 29, 2000) (citing *First United Methodist Church of Syracuse v. City of Syracuse,* 489 F.Supp. 185, 187 (N.D.N.Y.1980) (Munson, J.)). A state remedy satisfies this standard when it provides a full hearing and judicial determination at which a taxpayer may raise any and all constitutional objections to the tax. *Long Island Lighting Co. v. Town of Brookhaven,* 889 F.2d 428, 431 (2d Cir.1989) ("*LILCO* ").

"Under New York law, the normal method for challenging the validity of real property assessments is through the procedures in Article 7 of the Real Property Tax Law. N.Y. Real Prop. Tax Law, Art. 7." *423 South Salina Street, Inc. v. City of Syracuse,* 566 F.Supp. 484 (N.D.N.Y.) (Munson, C.J.), *aff'd,* 724 F.2d 26 (2nd Cir.1983) ("[w]e agree fully with the district court's [dismissal] of appellant's § 1983 claims, in particular with its analysis of ... the adequacy of appellant's remedies under New York law"). Taxpayers complaining of real property tax assessments may also avail themselves of New York's declaratory judgment procedure. N.Y.Civ.Prac.Law § 3001; *423 South Salina Street, Inc.,* 566 F.Supp. at 492. Finally, a disgruntled taxpayer may also seek an expedited review of official action through an "Article 78 proceeding."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

N.Y.Civ.Prac.Law, Art. 78; *423 South Salina Street, 566 F.Supp.* at 492.

**\*4** Izzo objects to the dismissal of this claim because, according to plaintiff, the State does not provide "plain forms" to taxpayers that wish to file a grievance. *See* Objections to Report-Recommendation (docket no. 35) ("Objections") at 3-4. Izzo seems to argue that by failing to provide "plain forms," the State does not afford a "plain remedy" to its citizens. Plaintiff also characterizes the above-referenced procedures as "confusing", thereby precluding application of the Tax Injunction Act to this claim.

As noted above, the prerequisite of a "plain" remedy has not been construed to mean a "perfect" one." *DeBuono,* 2000 WL 913937, \*4; *J & M Autobody, Inc. v. Gavin,* 27 F.Supp.2d 115, 117 (D.Conn.1998). While the provision of forms as requested by Izzo might further assist taxpayers that wish to challenge their assessment, the absence of such forms clearly does not preclude a finding that such remedies are plain, speedy and efficient. Consequently, both the Tax Injunction Act and principles of comity require the dismissal of this claim, and renders futile the amendment of his complaint in this regard.

(ii) Local Law 4-1996 claim.

Plaintiff next alleges that Local Law 4-1996 of the City is unconstitutional because it allows the municipality to auction tax-delinquent property without returning any remaining equity to the homeowner. Because Izzo's properties are subject to such an auction, plaintiff claims that his constitutional rights will be violated by the City at such an auction. [FN5]

FN5. As Magistrate Judge Sharpe correctly notes, although certain of Izzo's properties may have been sold during the course of this litigation, plaintiff retains ownership in other properties on which he has not paid all property taxes due and which are therefore subject to a delinquency auction.

Magistrate Judge Sharpe recommended dismissing this claim after finding that such claim was precluded by the Tax Injunction Act.

In objecting to this aspect of the Report-Recommendation, Izzo states that the Magistrate Judge's finding relative to the applicability of the Tax Injunction Act "may or may not be true," but argues that the retention by the City of any surplus money, i.e., any amount of money received at auction in excess of the delinquency, is a deprivation of property without Due Process of Law, as well as the taking of property without just compensation.

As the Magistrate Judge correctly noted, the manner in which a municipality administers its tax authority falls within the ambit of the Tax Injunction Act, which prohibits district courts from "enjoin[ing], suspend[ing] or restrain [ing] the ... *collection* of any tax." *LILCO,* 889 F.2d at 431 (emphasis added). The retention of some--or all--of the proceeds from a tax auction is clearly the collection of real property taxes. The only issue that remains is whether a "plain, speedy and efficient" remedy exists whereby citizens may challenge the constitutionality of Local Law 4-1996, which authorizes the retention of such proceeds. It does. "A declaratory judgment action [pursuant to N.Y.Civ.Prac.Law § 3001] is the appropriate procedural vehicle to challenge the constitutionality of a statute or ordinance." *Schultz v. City of Port Jervis,* 242 A.D.2d 699, 700 (2nd Dept.1997). While damages may not be available in such a proceeding, as noted above, the prerequisite of a "plain" remedy has not been construed to mean a "perfect" one; § 1341 requires federal abstention even where the state remedy is less satisfactory than the remedy available in federal court. *DeBuono,* 2000 WL 913937, \*4. Therefore, plaintiff's claims / proposed claims under Local Law 4-1996 may not be maintained. [FN6]

FN6. Moreover, this particular cause of action fails to state a claim as it is well settled that a city may foreclose on tax delinquent property and retain the entire proceeds from its sale as long as adequate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

steps are taken to notify the owners of charges due and of foreclosure proceedings. *Matter of Estate of Scott,* 116 A .D.2d 1020 (4th Dep't), *appeal den'd* 67 N.Y.2d 608 (1986) (citing *Nelson v. City of New York,* 352 U.S. 103 (1956)).

(iii) Code enforcement claims.

**\*5** Izzo next claims that the City selectively enforces its housing codes, contrary to plaintiff's right to Equal Protection of the Law. Izzo also argues that the defendants have "targeted" plaintiff relative to housing code inspections, and that the City has sued Izzo for minor code violations and imposed excessive fines on him relative to code violations that have been discovered.

Defendants argue that this claim is also barred by the Tax Injunction Act, and that, even if such Act were not applicable, plaintiff has failed to state a *prima facie* case for selective enforcement.

As Magistrate Judge Sharpe correctly noted, the Tax Injunction Act relates to the assessment, levy or collection of any *tax; fines* imposed by a municipality in conjunction with the enforcement of its housing code is not a tax. Thus, the Tax Injunction Act does not preclude this Court from considering Izzo's claims. The Magistrate Judge found, however, that plaintiff failed to allege a *prima facie* case for selective enforcement in his pleadings, and therefore recommended the dismissal of this claim on such basis.

In objecting to this aspect of the Report-Recommendation, Izzo recites the elements for a *prima facie* case for selective enforcement. Objections at 7. Plaintiff also states that "because of [plaintiff's] psychological disorder and lack of legal knowledge" he failed to state a claim "in a proper word order." *Id.* at 8.

A party may establish an Equal Protection violation based on the selective enforcement of a municipal code by demonstrating that:
(1) the person, compared with others similarly situated, was selectively treated, and (2) the

selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.
*Tiffany v. Village of Briarcliff Manor,* 1997 WL 177895, *9 (S.D.N.Y. Apr. 14, 1997) (citing *Zahra v. Town of Southold,* 48 F .3d 674, 683 (2d Cir.1995) (other citations omitted)).

As the Magistrate Judge noted, Izzo has failed to adequately plead, in either his complaint or proposed amended complaint, that he, compared with others similarly situated, was selectively treated. No *facts* are pleaded by plaintiff that would support such an allegation. Izzo's pleadings do not contain *any* references to other landlords, similarly situated, who were not, in fact, fined by the City. To the contrary, plaintiff specifically alleges that the City has wrongfully sued "property owners" "concerning housing code violations pursuant to the City of Syracuse ordinance." Compl. at ¶ 15, Proposed Am. Compl. at p. 8 (emphasis added). Thus, plaintiff himself claims that he *and other property owners* are being "targeted" by the City's code enforcement division.

"[S]elective prosecution implies that a selection has taken place. *LaTrieste Restaurant v. Village of Port Chester,* 188 F.3d 65, 70 (2nd Cir.), *cert. denied sub nom. LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester,* 528 U.S. 1187, 120 S.Ct. 1240 (2000). Absent allegations that the City knew of other violations on the part of others similarly situated, but declined to prosecute them, Izzo cannot establish that *he* was treated *selectively.* [FN7] *See id.*

> FN7. In his proposed amended complaint, plaintiff appears to claim that he was the victim of selective enforcement because topless bars and adult video stores in the City have allegedly violated city obscenity ordinances without being fined. Proposed Am. Compl. at 16. Simply put, owners of commercial properties, such as bars or adult video stores, are not "similarly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

situated" to landlords leasing residential property to tenants.

*6 In light of the foregoing, this claim must be dismissed, and any amendment to his complaint in this regard would be futile. [FN8]

> FN8. Izzo has also failed to plead facts which, if proven would establish that the City enforced such code based upon impermissible considerations, such as race or religion, to punish or inhibit the exercise by plaintiff of his constitutional rights, or by a malicious or bad faith intent to injure him.

(iv) Illegal search and seizure claims.

Izzo next claims that the City's code enforcers entered his properties without his permission or search warrants in order to find housing code violations, and charged plaintiff a fee for their actions, contrary to his rights under the Fourth Amendment to the U.S. Constitution.

The Magistrate Judge recommended dismissing this claim. In so recommending, the Magistrate Judge found that housing code inspections are, in fact, subject to the Fourth Amendment, but that Izzo, through his tenants, consented to the searches. Report-Recommendation at 24-25.

Plaintiff objects to the dismissal of this cause of action, and now claims that, contrary to the allegations in his pleadings that the tenants were at his property with his consent, such individuals are, in fact, "squatters" that occupied his property against his wishes. Objections at 8-10.

Administrative searches, such as inspections of residential rental property, are subject to the Fourth Amendment's prohibition of unreasonable searches and seizures. *Kraebel v. Michetti,* 1994 WL 455468, *10 (S.D.N.Y), *aff'd,* 57 F.3d 1063 (2nd Cir.), *cert. denied,* 516 U.S. 931 (1995); *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 534 (1967). However, the well established rule in this Circuit is that

"(c)onsent to a search by one with access to the area searched, and either common authority over it, a substantial interest in it or permission to exercise that access, express or implied, alone validates the search ." *United States v. Gradowski,* 502 F.2d 563, 564 (2d Cir.1974) (per curiam ); *U.S. v. Buettner-Janusch,* 646 F.2d 759 (2nd Cir.), *cert. denied,* 454 U.S. 830 (1981).

Herein, Izzo stated in his pleadings, under penalty of perjury, that "*he allowed many people to stay in the buildings without recieving [sic] rent money* " Compl. at ¶ 12; Proposed Am. Compl. at p. 7. These tenants authorized the searches at issue.

In his objections to the Report-Recommendation, plaintiff, now alerted by Magistrate Judge Sharpe that the consent by his tenants to the search would validate same, claims that the tenants remained in his properties *without his permission.* Objections at 8.

The purpose of a motion to dismiss is to assess the validity of the pleadings. *See* Fed.R.Civ.P. 12(b)(6). To require courts to accept as true factual allegations made in objections when those allegations *directly contradict* the facts set forth in the complaint "would be to stretch Rule 12(b)(6) far beyond even the generous pleading standards that we apply to pro se plaintiffs." *Henthorn v. Department of Navy,* 29 F.3d 682, 688 (D.C.Cir.1994). Because *Izzo himself* alleges in his pleadings that the tenants who allowed the City officials into the subject premises were in such properties with plaintiff's permission, the undersigned finds that consent to the subject searches was granted by individuals with access to the area searched and permission by Izzo to exercise that access. Consequently, the searches were valid and plaintiff's Fourth Amendment (proposed) claims in this regard must be dismissed. [FN9]

> FN9. The Court notes that even if the individuals were, in fact, "squatters," as Izzo alleges in his objections, the searches would still be valid. Even if the person who consents to a search does not have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

actual authority to consent, the search will be valid if there was an objectively reasonable belief that the consenting person had such authority. *U.S. v. Rojas,* 906 F.Supp. 120, 129 (E.D.N.Y.1995) (citations omitted). The individuals who authorized the searches were *living at the subject premises.* Clearly, it was objectively reasonable for the City officials to believe that these individuals had the authority to consent to the searches.

(v) Defamation claims.

*7 Plaintiff claims that in May 1997, the City placed a "slum property" sign in front of one of his properties, thereby violating his constitutional rights.

The Magistrate Judge characterized such claim as one alleging a Due Process violation, and concluded that Izzo failed to sufficiently allege the deprivation of a protected liberty interest. Specifically, Magistrate Judge Sharpe found that plaintiff's claims relating to the posting of such sign failed to rise to the level of a constitutional deprivation. Report-Recommendation at 25-28.

Damage to a person's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." *Rodriguez v. Margotta,* 71 F.Supp.2d 289, 297 (S.D.N.Y.) (citing *Paul v. Davis,* 424 U.S. 693 (1976)), *aff'd,* --- F.3d ---- (2nd Cir. July 12, 2000). Rather, in order to make a claim that defamation implicated a plaintiff's liberty interest, loss of reputation must be coupled with some other tangible element. *Rodriguez,* 71 F.Supp.2d at 297 (citation omitted). This is known as the "stigma plus" test. *Id.; Skiptunas v. Mills,* 2000 WL 14483, *3 (N.D.N.Y. Jan. 5, 2000) (Scullin, J.).

In objecting to the Report-Recommendation, Izzo argues that in addition to the posting of the "slum property" sign on his property, plaintiff's automobile was vandalized by a fourteen year old youth because he saw such sign. Objections at 10. Izzo also states that the defendants' actions caused plaintiff to suffer "humiliation and further anxiety."

*Id.* at 11. Izzo contends that the above satisfies the "stigma plus" requirement discussed above.

The fact that a third party may have committed a crime or otherwise caused injury to plaintiff or his property because the City posted a "slum property" sign on a parcel of land owned by Izzo is insufficient to establish the "plus" requirement. The "stigma-plus" test requires that the defamation be accompanied by an injury *directly caused by the Government, rather than an injury caused by the act of some third party. WMX Technologies, Inc. v. Miller,* 80 F.3d 1315, 1320 (9th Cir.1996) (emphasis added). State action must accompany *both* prongs of the "stigma-plus" test. *Cooper v. Dupnik,* 924 F.2d 1520, 1534 (9th Cir.), *aff'd. in relevant part,* 963 F.2d 1220 (9th Cir.1992) (en banc ); *Hardaway v. California Dept. of Corrections,* 1997 WL 61366 (N.D.Cal. Feb. 5, 1997). As noted by the *Cooper* court:

> If plaintiff only has to show that the state defamed him--and not that the state did something else as well--in order to state a claim for deprivation of liberty under § 1983, the effect would be to transmute all defamation actions against state actors in which plaintiff can show some harm resulting from the defamation into § 1983 actions.

*Cooper,* 924 F.2d at 1534. Moreover, humiliation and/or anxiety allegedly suffered by Izzo as a result of the defendants' actions in this regard fail to meet the requirement of a stigma plus some other deprivation. *Gordon v. Nicoletti,* 84 F.Supp.2d 304, 312 (D.Conn.2000). In light of the foregoing, the Magistrate Judge properly recommended the dismissal of plaintiff's defamation claims / proposed claims under § 1983.

(vi) Illegal purchase claim

*8 Izzo next suggests that employees of the City illegally purchase auctioned properties. *See* Proposed Am. Compl. at p. 14.

The Magistrate Judge recommended the dismissal of this cause of action, and the plaintiff does not object to such dismissal. Objections at 11.

In light of the foregoing, this cause of action must

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2000 WL 1222014 (N.D.N.Y.)

(Cite as: 2000 WL 1222014 (N.D.N.Y.))

Page 8

be dismissed, and any request to amend Izzo's complaint in this regard must be denied as futile.

(vii) Remaining claims.

Finally, plaintiff alleges that the defendants' actions caused him to suffer severe anxiety, mental anguish, humiliation and economic loss. Compl. at ¶ 41; Proposed Am. Compl. at 18.

The Magistrate Judge classified these claims as ones alleging a violation of Izzo's Eighth Amendment right to be free from cruel and unusual punishment. (Report-Recommendation at 29)--a characterization with which the plaintiff agreed. Objections at 11. Accordingly, the Court will view these remaining claims in light of the requirements for stating a claim under the Eighth Amendment.

The Eighth Amendment draws its meaning "from the evolving standards of decency that mark the progress of a maturing society." *Kaminsky v. Rosenblum,* 929 F.2d 922, 926 (2nd Cir.1991). "The Eighth Amendment's bar on inflicting cruel and unusual punishments ... proscribes more than physically barbarous punishments. It prohibits penalties that are grossly disproportionate to the offense as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency." *McNatt v. Unit Manager Parker,* 2000 WL 307000, *3 (D.Conn. Jan 18, 2000) (internal quotations omitted). Unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. *Mann by Parent v. Meachem,* 929 F.Supp. 622, 633 (N.D.N.Y. Jun 19, 1996) (McAvoy, C.J.).

Magistrate Judge Sharpe found that the Izzo "utterly fail[ed] to state any facts upon which to base an Eighth Amendment claim." Report-Recommendation at 30. Plaintiff objects to this aspect of the Report-Recommendation, stating that the defendants have "inflicted sever [*sic* ] pain against the plaintiff in the form of stress pain, anxiety and mental pain and fear." Objections at 11.

Izzo's (proposed) claims under the Eighth Amendment must be dismissed. None of the allegations in plaintiff's pleadings discussing defendants' conduct approaches the high bar that has been established by the Courts relating to Eighth Amendment claims. Izzo has not been subjected to penalties that are grossly disproportionate to the offenses he has committed by failing to comply with the City's housing code, nor do the defendants' actions indicate any departure from the evolving standards of decency that mark the progress of a maturing society. Finally, while plaintiff may have suffered various forms of pain and stress as a result of the defendants' conduct, it is clear that their actions fall far short of that which might be considered the unnecessary and wanton infliction of pain. Consequently, these claims must be dismissed, and any motion to add such claims must be denied as futile. [FN10]

> FN10. Moreover, to the extent that these claims are viewed as pendent state-law claims rather than ones brought under the Eighth Amendment, this Court declines to exercise supplemental jurisdiction over such claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 716 (1966); *Western Mohegan Tribe and Nation of New York v. New York,* 100 F.Supp.2d 122, 129 (N.D.N.Y.2000) (Kahn, J.).

C. Izzo's second request for injunctive relief.

*9 As noted above, plaintiff filed a second request for a temporary restraining order in this action. *See* docket no. 29. In light of the Court's Order dismissing this matter in its entirety, such application is denied.

D. Izzo's mental health.

Finally, the Court would be remiss if it failed to comment on the fanciful allegations contained in plaintiff's pleadings and his objections to the Report-Recommendation. The Magistrate Judge discussed in some detail this matter concerning Izzo's pleadings; the Court notes that it, too, finds such allegations to be incredible. While on a more limited scale, plaintiff's objections contain

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9

2000 WL 1222014 (N.D.N.Y.)

**(Cite as: 2000 WL 1222014 (N.D.N.Y.))**

incoherent sentences as well as fanciful claims, including Izzo's allegation that he formally requested that "the New York State Bureau of Funeral Directing [permit plaintiff] to be buried in N.Y. in a liquid presevative [*sic* ], so the plaintiff could be medically resurrected after his suicide." Objections at 2.

WHEREFORE, in light of the above, it is hereby

ORDERED, that Magistrate Judge Sharpe's Report-Recommendation (docket no. 34) is ACCEPTED in its ENTIRETY and Izzo's claims are hereby DISMISSED, and it is further

ORDERED, that plaintiff's request for injunctive relief (docket no. 29) is DENIED, and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties by regular mail.

IT IS SO ORDERED.

2000 WL 1222014 (N.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 5:98CV00778  (Docket)
                                    (May. 14, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

F

Westlaw.

Slip Copy                                                                                    Page 1

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Margaret Sisper LEIBOWITZ, Plaintiff,
v.
CORNELL UNIVERSITY, New York State School
of Industrial and Labor Relations,
Edward J. Lawler, Ronald Seeber, Ann W. Martin,
Esta R. Bigler, and Nick
Salvatore, Defendants.
**No. 03 CV 9976(GBD).**

Feb. 3, 2005.

*MEMORANDUM DECISION AND ORDER*

DANIELS, J.

**\*1** In the complaint, plaintiff asserts claims for age and gender discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), respectively, as well as in violation of both New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Additionally, the complaint asserts claims for violation of the Equal Pay Act, breach of contract, two causes of action for breach of an implied in fact contract, and *quantum meruit.*

Defendants are moving, pursuant to Fed.R.Civ.P. 12(b)(1) and (6) to dismiss the complaint for failure to state a claim upon which relief may be granted. The motion is granted.

The complaint sets forth plaintiff's employment history with defendant Cornell University in its School of Industrial and Labor Relations ("ILR

School") from 1978 to 2003. As will be discussed *infra,* portions of the discrimination claims are time-barred. Hence a review of the factual allegations of the complaint will focus on the alleged acts of discrimination that are timely raised.

In reviewing a complaint for dismissal under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Bolt Elec ., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). The complaint should only be dismissed where it appears beyond doubt that plaintiff can present no set of facts entitling her to relief. *Conley v. Gibson,* 355 U.S. 41, 46 (1957); *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). On a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), the Court is precluded from considering matters outside of the complaint. *Courtenay Communications, Corp. v. Hall,* 334 F.3d 210, 213 (2d Cir.2003). In this regard, a complaint includes "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-48 (2d Cir.1991)); *see also, Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995). However, plaintiff's mere notice or possession of a document is not sufficient to warrant the Court's consideration of the document. Rather, "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion ..." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

The complaint alleges that in 1987, plaintiff was promoted to Senior Extension Associate II. Plaintiff

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

alleges that she relied upon the representations of Cornell University and the ILR School, as conveyed to her by two deans, that her appointment to this position was the equivalent of tenure, so that she could only be fired for cause or budgetary exigencies. The complaint further alleges that "[p]ursuant to the policies of Cornell and the ILR School, a Senior Extension Associate II is a tenured faculty member." (Compl.¶ 87). Thus, plaintiff maintains that Cornell University and the ILR School entered into a contract with her whereby she was guaranteed life-time employment except that she could be terminated for cause and/or budgetary exigencies.

*2 After her initial appointment in 1987, plaintiff received automatic, successive reappointments every five years, *i.e.,* 1992 and 1997. The complaint states that on July 1, 2000, plaintiff, who was then fifty years old, was informed that Cornell University was terminating her employment as a Senior Extension Associate II as a result of budgetary exigencies.

Plaintiff learned of the change in her employment status by letter. Defendants submitted the letter in support of their motion. Since plaintiff specifically relied on the document in her pleadings, consideration of the full content of the letter is appropriate. The letter informed plaintiff that, due to budgetary exigencies, her current employment contract, which expires on October 31, 2002, would not be renewed. (Roth Aff. Ex. 8). The letter explained that for several years plaintiff has been teaching on a year-to-year basis in Ithaca, and there have been no duties performed in the position in New York City for which she was hired. The letter further indicated that for the 2002/03 academic year, plaintiff would be formally assigned to Ithaca as her place of employment. Plaintiff was assured that her employment would be extended until May 31, 2003, and that she would continue to receive her current salary and an additional $30,000 to offset her travel expense to and from New York City. Plaintiff was specifically advised that Cornell University was not making any representation as to her future employment after May 31, 2003.

Plaintiff accepted her new assignment in Ithaca, and began working in the Fall of 2002. In December of 2002, plaintiff chose to take "advantage" of Cornell University's offer of early retirement, and accordingly plaintiff retired. (Compl. ¶ 45). Plaintiff further alleges that between January 1, 2003 and May 30, 2003, she performed work for Cornell University expecting to be compensated. In May of 2003, she sent Cornell University a $25,000 bill for her services which Cornell University refused to pay.

Plaintiff contends that the excuse proffered for her termination was a pretext for discrimination. She alleges, upon information and belief, that the six employees who were fired by Cornell University due to budgetary exigencies were all females over the age of forty. Five of the employees were clerical support staff and plaintiff was the only academic employee terminated. The complaint further alleges, upon information and belief, that plaintiff was replaced with a "younger employee(s)." (Compl.¶ 51). Plaintiff also claims that Cornell University and the IRL School violated the Equal Pay Act ("EPA") by paying her less wages than they paid to male employees even though she performed equal or superior work.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2003, claiming the failure to renew her contract was due to age and gender discrimination. The EEOC dismissed the charge, and issued plaintiff a right to sue letter on October 7, 2003. Plaintiff commenced the instant action on December 16, 2003.

TIMELINESS OF THE DISCRIMINATION
CLAIMS
*3 Claims, under both the ADEA and Title VII, must be filed with the EEOC 180 days after the alleged unlawful employment practice occurred or if the aggrieved party instituted proceedings with a state or local agency, within 300 days after the discriminatory practice complained of occurred. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). This filing requirement acts as a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 3

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

U.S. 385 (1982); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (citation omitted). In contrast, claims under the NYSHRL and NYCHRL must be filed within three years of the alleged act of discrimination. *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997); *Quinn,* 159 F.3d at 765; N.Y. City Admin. Code § 8-502(d).

For purposes of this case, it is irrelevant that the state law claims are governed by a longer statute of limitations than their federal counterparts. The only discriminatory incident set forth in the complaint which is timely, is plaintiff's claim that, in July of 2002, her employment was terminated as a result of age and gender discrimination. [FN1] Those portions of the complaint concerning the refusal to grant plaintiff an interview, in 1997, for the position of Director of Management Labor Relation Studies, and the appointment, in 1998, of a male applicant to that position are untimely under both the federal and state claims. Therefore, those portions of the first four causes of action concerning those alleged discriminatory acts are dismissed as time-barred.

> FN1. Plaintiff acknowledges that "this Court has jurisdiction over all discriminatory acts that occurred after April 30, 2002, namely Defendants' termination of [plaintiff's] employment as a Senior Extension Associate II on July 1, 2002." (Pl.'s Opp'n Mem. at 2).

*PRIMA FACIE* CASE OF DISCRIMINATION
Defendants argue that the remaining portions of the plaintiff's age and gender discrimination claims must be dismissed because the complaint reveals that she voluntarily resigned her employment, and consequently did not suffer any adverse employment action. Plaintiff, however, contends that her termination as a Senior Extension Associate II constitutes an adverse employment action. She argues that defendants cannot immunize themselves from liability by offering plaintiff a temporary assignment simultaneously with their termination of her employment.

Both ADEA and Title VII claims, as well as

discrimination claims brought under the NYSHRL and the NYCHRL, are similarly analyzed pursuant to the three-part evidentiary framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001); *Tarshis v. Reise Org.,* 211 F.3d 30, 35 (2d Cir.2000); *Lightfoot,* 110 F.3d at 913; *Esterquest v. Booz-Allen & Hamilton, Inc.,* 2002 WL 237846, *4 n. 1 (S.D.N.Y. Feb. 19, 2002). Under the *McDonnell* framework, a plaintiff must initially prove, by a preponderance of the evidence, a *prima facie* case of discrimination. *Tarshis,* 211 F.3d at 35. The burden of making such a showing is a *de minimus* one. *Abdu-Brisson,* 239 F.3d at 467. If plaintiff makes a *prima facie* showing of discrimination, the burden shifts to defendants to articulate a legitimate, non-discriminatory business rationale for their actions. *Abdu-Brisson,* 239 F.3d at 466 (citing *McDonnell Douglas,* 411 U.S. at 802-04). "If the employer articulates such a reason, the presumption of [ ] discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that [ ] discrimination was the true reason for the adverse employment action." *Id.*

*4 In order to make out a *prima facie* case of age discrimination, plaintiff must establish the following four elements: (1) plaintiff is a member of the protected age group; [FN2] (2) she is qualified for the position; (3) she was subjected to an adverse employment decision or discharge, and (4) her termination occurred under circumstances giving rise to an inference of discrimination. *Tarshis,* 211 F.3d at 35. Plaintiff must similarly establish four elements to make out a *prima facie* case of discrimination with regard to her gender claim, "namely that [she] is (1) a member of the protected class, (2) qualified for and satisfactorily performing [her] job, (3) subjected to an adverse employment decision, and that (4) this adverse decision occurred under circumstances giving rise to the inference of discrimination." *Tarshis,* 211 F.3d at 36 (citations omitted).

> FN2. Under the ADEA, persons forty years or older are members of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

protected class. *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir.2001) (citing 29 U.S.C. § 631(a)).

Plaintiff's conclusory allegations that she was not reappointed to her position as a Senior Extension Associate because she is a woman over forty years old is insufficient to demonstrate that it occurred under circumstances giving rise to an inference of discrimination. Plaintiff cannot show her reappointment was motivated due to her age or gender simply by asserting bare-bone allegations, that upon information and belief, Cornell University terminated six employees for budgetary exigencies and all were women over the age of forty. *See, Hogan v. Metromail,* 107 F.Supp.2d 459, 468-69 (S.D.N.Y.2000) (neither unsupported assertion nor factual allegations of disparate treatment, based on information and belief, is sufficient to withstand motion to dismiss.). Even considering plaintiff's further allegation that, upon information and belief, Cornell University replaced her with a "younger employee(s)" is insufficient to satisfy her *de minimus* burden of making a *prima facie* showing of discrimination. Plaintiff must set forth some factual allegations to show a discriminatory intent. Since plaintiff is unable to even allege whether Cornell University replaced her with one or more specific employees, no credence can be given to the allegation that "[u]pon information and belief, Cornell [University] replaced [plaintiff] with a younger employee(s)." (Compl.¶ 51) Additionally, plaintiff's allegation that Cornell University discriminates against female employees over the age of forty is belied by plaintiff's allegations that, notwithstanding her gender, she was appointed to the position of Senior Extension Associate II, and was reappointed to the position when she was forty-one years old and then again when she was forty-six years old. The complaint fails to allege factual circumstances giving rise to a plausible inference of either gender or age discrimination sufficient to survive a motion to dismiss. *See, Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir.1994).

The complaint fails to make out the requisite element that plaintiff was the subject of an adverse employment action. An adverse employment action

is defined "as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir.2004). To rise to the level of an adverse employment action, the act must be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities." ' *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003) (quoting *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000)). Termination of employment clearly constitutes an adverse employment action. *See, Terry,* 336 F.3d at 138.

**\*5** Defendants did not terminate plaintiff's employment. Rather, they chose not to renew her appointment for another five-year term. Defendants extended plaintiff's employment for an additional year after the term of her reappointment expired, and plaintiff's salary and benefits remained unchanged. Plaintiff agreed to continue her employment. She then voluntarily chose to resign and accept an early retirement package in December, even though her employment was guaranteed to continue at least until the end of May. By electing to accept early retirement, plaintiff terminated her own employment. Thus, she was not the subject of an adverse employment action unless plaintiff shows that she was constructively discharged. *See, Leiman v. State of New York,* 2000 WL 1364365, *9 (S.D.N.Y. Sept. 21, 2000), *aff'd,* 2001 WL 363520 (2d Cir. Apr. 11, 2001). At oral argument, plaintiff's counsel clearly advised the Court that plaintiff is not claiming "either constructive discharge or a forced resignation." (Tr. at 9). Since defendants did not terminate plaintiff's employment, she did not suffer an adverse employment action as alleged in her complaint. [FN3] Accordingly, the first, second, third and fourth causes of action are dismissed.

> FN3. In a footnote in plaintiff's memorandum in opposition to the motion to dismiss, plaintiff for the first time argues that "[a]ssuming arguendo that Defendants did not terminate Plaintiff's employment on July 1, 2002, they still demoted her which constitutes an adverse employment action." (Pl.'s Opp'n Mem. at 6 n. 1). The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 5

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

complaint claims discrimination arising from plaintiff's termination of employment. The term "demotion" does not appear anywhere within the complaint. Plaintiff cannot now attempt to replead the complaint alleging a new theory to support her discrimination claims in an effort to survive defendants' motion to dismiss.

THE EQUAL PAY ACT CLAIM

In the fifth cause of action, plaintiff alleges that Cornell University violated the Equal Pay Act ("EPA") by paying her less wages than male employees even though she performed equal or superior work. "To prove a violation of the EPA, a plaintiff must first establish a *prima facie* case of discrimination by showing: 'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." ' *Belfi v. Prendergast*, 191 F .3d 129, 135 (2d Cir.1999) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir.1995)). With respect to the second element, plaintiff is not required to establish that her job is identical to a higher paid position. She must, however, demonstrate that the two positions are substantially equal in skill, effort and responsibility. *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir.2001) (quoting *Tomka*, 66 F.3d at 1310).

The allegation in the complaint that plaintiff "was not receiving equal pay for equal work ... [is] too conclusory to withstand a motion under Rule 12(b)(6) ..." *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir.1991). Plaintiff's bald assertion that male employees received higher wages than plaintiff under similarly working conditions is insufficient to make out a *prima facie* case under the EPA. At the very least plaintiff must allege factual allegations to support her claim such as indicating a male employee, similarly situated to her working conditions, received higher wages, or alleging that other female employees are discriminated against in a similar manner as plaintiff. *See, Rose v. Goldman, Sachs & Co.*, 163 F.Supp.2d 238, 243-44 (S.D.N.Y.2001); *Bass v.*

*World Wrestling Fed'n Enter., Inc.*, 129 F.Supp.2d 491, 503 (E.D.N.Y.2001). Since the allegations in the complaint are wholly inadequate to make out a *prima facie* case under the EPA, the fifth cause of action is dismissed.

BREACH OF CONTRACT

**\*6** In the sixth cause of action plaintiff claims that Cornell University and the ILR School breached their contract guaranteeing plaintiff lifetime employment. Plaintiff contends that, pursuant to the policies of Cornell University and the ILR School, a Senior Extension Associate II, such as herself, is a tenure faculty member.

Since plaintiff relies on the policies of Cornell University and the ILR School in drafting her complaint, it is appropriate for this Court to consider the "Cornell University Faculty Handbook" and the "ILR Faculty Personnel Policies: Guidelines and Practices," which were submitted by defendants. Both documents indicate that the term of appointment for a Senior Extension Associate is a maximum of five years, and that the position is subject to reappointment. (Roth Aff. Ex. 18 at 33; Ex. 19 at 1).

Plaintiff's alleged reliance on representations made by two deans that she had the "equivalent" of tenure is not a sufficient basis to create a contract. The employment handbook and guidelines clearly indicate that appointments could be for no more than a five years period. Additionally, plaintiff was put on notice that she did not have a lifetime appointment when she received, on three separate occasions, appointment for a five-year term. Moreover, plaintiff alleges that Cornell University and the ILR School treated nearly all other Senior Extension Associates II as "if" they had tenure. (Compl.¶ 24). Such an allegation demonstrates that plaintiff recognized that not everyone who held that position automatically received tenure. Employees, who lack tenure status, may be terminated from their position and cannot recover damages for breach of contract. [FN4]

  FN4. In any event, plaintiff contends that defendant's stated reason for not renewing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 6

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

her contract, *i.e.,* budgetary exigencies, would be a permissible reason for terminating her employment.

Accordingly, the allegations in the complaint fail to show that a contract existed between plaintiff and either Cornell University or the ILR School ensuring her employment indefinitely. Therefore, the sixth cause of action for breach of contract is dismissed.

### BREACH OF IMPLIED IN FACT CONTRACT FOR LIFETIME TENURE

Plaintiff argues that even if the Court does not find the existence of an express contract for lifetime tenure, the Court should nevertheless find that Cornell University and the ILR School entered into an implied in fact contract with plaintiff.

"A contract implied in fact may result as an inference from the facts and circumstances of the case although not formally stated in words ... and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Jemzura v. Jemzura,* 369 N.Y.S.2d 400, 408 (N.Y.1975). An implied in fact contract is equally binding as an expressed contract as the law does not distinguish between agreements made by words and those made by conduct. *Jemzura,* 369 N.Y.S.2d at 408. Nevertheless, like an express contract, a contract implied in fact requires mutual assent evincing the intention of the parties to be bound by specific contractual terms. *See, Nadel v. Play-By-Play Toys & Novelties, Inc.,* 208 F.3d 368, 376 n. 5 (2d Cir.2000). To determine the existence of a contract implied in fact, the focus rests upon the parties' conduct. *Watts v. Columbia Artists Mgmt., Inc.,* 591 N.Y.S.2d 234, 236 (N.Y.App.Div.1992). Where the facts are inconsistent with a finding that the parties agreed to the specific terms of the contract to which they would be bound, no implied contract may be found to exist. *Lubeck Realty, Inc. v. Flintkote Co.,* 565 N.Y.S.2d 922, 924 (N.Y.App.Div.1991).

**\*7** In the case at bar, the policies and guidelines of the University and the ILR School clearly informed plaintiff that she could only be appointed in her position for a maximum period of five years, and

that the position was subject to reappointment. Consistent with those expressed terms of employment, plaintiff was originally appointed for a five year term and reappointed to such terms on two successive occasions. Defendants' conduct in reappointing plaintiff evinces the understanding, consistent with the schools' guidelines, that plaintiff did not have lifetime employment. The factual allegations of the complaint are inconsistent with a finding that the parties agreed, by their conduct, to be bound to a contract affording plaintiff lifetime employment. Since no implied in fact contract exists between the parties, plaintiff's seventh cause of action is dismissed.

### IMPLIED IN FACT CONTRACT FOR SERVICES RENDERED POST-RETIREMENT

Plaintiff also seeks to recover $25,000 claiming Cornell University and the ILR School breached an implied in fact contract to pay plaintiff for work she performed for them between January and May of 2003, after she accepted early retirement. No further factual allegations are contained in the complaint in support of this claim.

The complaint fails to set forth the requisite factual allegations upon which it can be inferred that the parties intended to enter into a further contract. *See, European Am. Bank v. Cain,* 436 N.Y.S.2d 318, 321 (N.Y.App.Div.1981). The complaint does not allege the nature of the services rendered by plaintiff, the circumstances under which the parties allegedly entered into this contract, or the specific terms and provisions of the agreement. Plaintiff's bald assertion that she entered into an implied in fact contract with Cornell University and the ILR School to be paid for her services is insufficient to state a viable claim for breach of an implied in fact contract. *See, Dooner v. Keefe, Bruyette & Woods, Inc.,* 157 F.Supp.2d 265, 286 (S.D.N.Y.2001). Accordingly, plaintiff's eighth cause of action is dismissed.

### QUANTUM MERUIT

Plaintiff argues that in the event this Court concludes that she did not enter into an implied in fact contract for work she performed between January and May of 2003, Cornell University and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 267560 (S.D.N.Y.)

**(Cite as: 2005 WL 267560 (S.D.N.Y.))**

the ILR School are still liable to her in *quantum meruit* because they benefitted from her services.

In order to state a claim for *quantum meruit* under New York law, plaintiff must allege: " '(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." ' *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 66 (2d Cir.1999) (quoting *Martin H. Bauman Assoc., Inc. v. H & M Int'l Transp., Inc .,* 567 N.Y.S.2d 404, 408 (N.Y.App.Div.1991)); *see also, Lehrer McGovern Bovis, Inc. v. New York Yankees,* 615 N.Y.S.2d 31, 34 (N.Y.App.Div.1994). Plaintiff's expectation to be compensated must also be reasonable. *Linden v. Moskowitz,* 743 N.Y.S.2d 65, 67 (N.Y.App.Div.2002).

**\*8** The complaint alleges that, in May of 2003, plaintiff submitted a bill in the amount of $25,000 to Cornell University. Plaintiff does not allege what services she performed during that five month period. The complaint is also devoid of any factual allegations indicating that, following plaintiff's resignation, Cornell University or the IRL School solicited or agreed to pay for plaintiff's services. Therefore, the complaint fails to adequately plead a cause of action for *quantum meruit. See, Singerman v. Reyes,* 659 N.Y.S.2d 762, 763 (N.Y.App.Div.1997) (Dismissal of *quantum meruit* claim proper given plaintiff's failure to adequately document the alleged services she rendered for defendants, or if such services could not be documented, plaintiff failed to indicate the reasonable value of the services.); *see also, Linden,* 743 N.Y.S.2d at 67 (*Quantum meruit* claim held to be insufficient where there were no allegations demonstrating that plaintiff rendered services for defendants for which she reasonably expected compensation.).

CONCLUSION

In light of the foregoing, the defendants' motion to dismiss the complaint is granted.

2005 WL 267560 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV09976  (Docket)

(Dec. 16, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.