UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JONATHAN JUNG,
                                :

                 Plaintiff,

                                :     05-CV-4286 (MBM)

         - against -

                                  :     ECF Case

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP,
                                  :

                 Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF DAVID E. SCHWARTZ, ESQ.
## SUBMITTED IN SUPPORT OF DEFENDANT'S MOTION
## TO COMPEL ARBITRATION AND STAY THIS ACTION

David E. Schwartz, an attorney duly admitted to practice law before this

Court, hereby declares under penalty of perjury:

1.       I am an attorney admitted to practice in the State of New York and

Counsel with the firm of Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for

Skadden, Arps, Slate, Meagher & Flom LLP ("Defendant" or the "Firm") in the above

captioned matter. I am fully familiar with the facts set forth herein. This declaration is

submitted in support of Defendant's motion to compel arbitration of all claims in the

Amended Complaint of Plaintiff Jonathan Jung ("Plaintiff" or "Mr. Jung") dated October

28, 2005 and stay this action pending completion of the arbitration proceeding.

2.       Attached hereto as exhibits are true and correct copies of the

following documents which are referred to in the Memorandum of Law in Support of

Defendant's Motion to Compel Arbitration and Stay this Action:

| Exhibit | Document |
|---------|----------|
| A | Plaintiff's Amended Complaint filed with the Court on October 28, 2005; |
| B | Mutual Agreement to Arbitrate Claims between Mr. Jung and the Firm, signed by Mr. Jung on September 8, 2002; |
| C | Memorandum pertaining to the Mutual Agreement to Arbitrate Claims, dated February 4, 2002; |
| D | Firm's Application for Employment, completed and signed by Mr. Jung on August 10, 1998; |
| E | Letter from the Firm's counsel to Mr. Jung's counsel dated October 20, 2005, requesting that Mr. Jung submit his claims to arbitration (enclosures omitted); |
| F | Letter from Mr. Jung's counsel to the Firm's counsel dated October 28, 2005, rejecting the Firm's request that Mr. Jung submit his claims to arbitration; |
| G | Letter from the Firm's counsel to Mr. Jung's counsel dated November 1, 2005, requesting that Mr. Jung voluntarily dismiss his New York City Human Rights Law ("NYCHRL") retaliation claim; and |
| H | Letter from Mr. Jung's counsel to the Firm's counsel dated November 1, 2005, rejecting the Firm's request that Mr. Jung voluntarily dismiss his NYCHRL retaliation claim. |

Dated: New York, New York
       November 14, 2005

/s/ David E. Schwartz
David E. Schwartz

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

JONATHAN JUNG                              :
                                           :    Civil Case No.:
                    Plaintiff,             :    05 CV 4286(MBM)
                                           :
                                           :
          -against-                        :    AMENDED COMPLAINT
                                           :
                                           :    PLAINTIFF DEMANDS A
SKADDEN, ARPS, SLATE MEAGHER & FLOM,       :    TRIAL BY JURY
LLP,                                       :
                                           :
                    Defendants.            :
------------------------------------------------------------------ X

Plaintiff, Jonathan Jung, by his attorney, Brendan Chao, Esq., for his Amended
Complaint alleges as follows:

## THE PARTIES

1.    Plaintiff, Jonathan Jung ("Mr. Jung" or "Plaintiff") is an Asian-American who
was born in Seoul, South Korea. Mr. Jung resides at 93 Caterson Terrace, Hartsdale New York.
Mr. Jung was formerly employed by Skadden, Arps, Slate Meagher & Flom, LLP.

2.    Defendant, Skadden, Arps, Slate Meagher & Flom, LLP ("Skadden Arps") is a
law firm with international offices and offices within the United States, including the offices in
which Plaintiff worked in New York, New York, and White Plains, New York. Its principal
place of business is New York, New York.

## THE NATURE OF THE ACTION

3.    This is a civil action for damages and remedies for discrimination in employment on
the basis of national origin discrimination, racial discrimination, and retaliation under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the New York State Executive Law, as amended, § 290 et seq. ("New York State Human Rights Law"); and the Administrative Code of the City of New York, as amended, § 8-101 et seq. ("New York City Human Rights Law"), as well as damages and remedies available under the common law. Specifically, Defendants discriminated against Mr. Jung because of his national origin and race, and retaliated against him for engaging in protected activity by terminating his employment.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.      Mr. Jung filed a charge of discrimination on the basis of race, national origin, and retaliation, in June 2004 with the Equal Employment Opportunity Commission ("EEOC").

6.      On or about January 31, 2005, counsel for Mr. Jung, Brendan Chao, received a Dismissal and Notice of Right to Sue letter from the EEOC.

7.      Plaintiff has served a copy of this amended complaint on the New York City Commission on Human Rights and Corporation Counsel.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiff's claims occurred within the Southern District of New York.

## FACTS

9.      Mr. Jung is Asian-American of Korean descent.

2

10.     During his initial interview with Skadden Arps, Mr. Jung met with Mr. James McCarthy ("Mr. McCarthy").

11.     During the interview process, Mr. Jung spoke to a number of Skadden Arps employees including, Andrea Zavell and Will Eiwanger, and a Human Resources employee before returning to James McCarthy for a second interview.

12.     Ms. Susan Dornfeld ("Ms. Dornfeld"), a Caucasian Skadden Arps employee, met briefly with Mr. Jung during the interview process, asked a few questions of Mr. Jung, and deferred the decision to hire Mr. Jung to Mr. McCarthy.

13.     On or about September 8, 1998, Skadden Arps hired Mr. Jung as a Tax Coordinator.

14.     Mr. Jung's responsibilities at Skadden Arps included managing and overseeing quarterly tax payments for international partners, advising attorneys on the guidelines, policies, costs, and compliance on various tax issues, and managing Skadden Arps's expatriate tax issues.

15.     Throughout Mr. Jung's employment with Skadden Arps, he was qualified for the position he held, and he performed his duties in a professional and competent manner.

16.     At various times throughout his employment with Skadden Arps, Mr. Jung experienced discrimination based on his race and national origin.

17.     This culminated with the termination of Mr. Jung's employment in retaliation for a number of complaints he made concerning discrimination in the workplace.

18.     In or about December 1999, Ms. Dornfeld, who was Mr. Jung's supervisor, resigned and left Skadden Arps.

3

19.     During Ms. Dornfeld's absence, Mr. Jung was promoted to International Tax Supervisor.

20.     On or about October 7, 2002, Skadden Arps rehired Ms. Dornfeld.

21.     Following her rehire by Defendant Skadden Arps in October 2002, Ms. Dornfeld hired, almost exclusively, only Caucasian employees into Defendant Skadden Arps' Tax and Investment Department.

22.     Following her rehire by Defendant Skadden Arps in October 2002, Ms. Dornfeld began interviewing candidates for Mr. Jung's position.

23.     Ultimately, following Mr. Jung's termination of employment, a Caucasian employee replaced Mr. Jung.

24.     Following Ms. Dornfeld's rehire by Defendant Skadden Arps in October 2002, Mr. Jung was never again promoted.

25.     Defendant Skadden Arps provided technology allowances to several Caucasian non-lawyer employees in Mr. Jung's department; these allowances included new computers, software, and hardware peripherals.

26.     The technology allowances, however, were not provided to Mr. Jung.

27.     Ms. Dornfeld routinely recommended higher bonuses and raises for Caucasian employees in Mr. Jung's department while giving lower bonuses and raises to Mr. Jung and other minority employees in her department.

28.     In or about March 2003, Skadden Arps relocated the Tax and Investment Department to White Plains, New York.

4

29.     While working in Skadden Arps's New York City and White Plains office, Ms. Dornfeld made discriminatory decisions regarding performance evaluations, procedures for assigning work, and limited the opportunities for promotions to Mr. Jung and other racial minority employees in her department, including a number of Asian employees.

30.     While working in Skadden Arps's New York City and White Plains office, Ms. Dornfeld, who is responsible for, among other things, preparing annual performance evaluations for employees, routinely gave minority employees, including Mr. Jung, poor evaluations in an effort to "paper" their files for poor performance, thereby forcing their resignations.

31.     Ms. Dornfeld took this course of action so that she could hire, almost exclusively, Caucasian employees to replace the minority employees who were forced to resign.

32.     While working in Skadden Arps's New York City and White Plains office, Ms. Dornfeld forced the resignation of a number of racial minority employees, such as Rosie Francis, Eugene Lam, and Violet Chan, and replaced them all, almost exclusively, with Caucasian employees.

33.     While working in Skadden Arps's New York City office, Ms. Dornfeld changed the evaluations of minority employees after their respective evaluations were submitted to her by other supervisors.

34.     Although these employees stated non-discriminatory reasons for their respective resignations, Ms. Dornfeld's discriminatory treatment toward them was a motivating factor in their decisions to leave Defendant Skadden Arps employment.

35.     While working in Skadden Arps's White Plains office, Ms. Dornfeld gave one direct peer of Mr. Jung's, a Caucasian, two raises within one year.

5

36.     Skadden Arps's stated policy only allows for one raise per year.

37.     Upon information and belief, Ms. Dornfeld has never given two annual raises to a minority employee at Skadden Arps, including Mr. Jung.

38.     While working in Skadden Arps's White Plains office, racial minority employees were often asked to work late while Caucasian employees were permitted to leave as normally scheduled.

39.     While working in Skadden Arps's White Plains office, Ms. Dornfeld used abusive language toward minority employees, especially Mr. Jung.

40.     For example, Ms. Dornfeld summoned Mr. Jung into her office in April 2003, and began yelling at him, stating in part, "What the fuck are you talking about? I don't understand what the fuck you just said."

41.     Mr. Jung never observed Ms. Dornfeld swearing at Caucasian employees.

42.     Ms. Dornfeld made racially derogatory comments.

43.     While working in Skadden Arps's New York City office, Ms. Dornfeld was arranging desk assignments in the White Plains office, and stated, "I don't want to have Orientals sitting together and blacks sitting together because they will spend all day talking."

44.     Ms. Dornfeld prepared Mr. Jung's 2003 performance evaluation, which was filled with comments implying that he was unskilled with, or uncomfortable with the English language.

45.     Mr. Jung has lived in the United States for approximately thirty (30) years, and received a degree in economics from the University of Buffalo.

6

46.    An Asian American employee and an African American employee from other Skadden Arps departments sought to apply for two vacant positions in Mr. Jung's department.

47.    Neither employee was selected for either of the vacant positions.

48.    The Asian American employee was told that taking the position would involve a reduction in salary, and he was discouraged from applying.

49.    As noted above, the Asian American employee did not fill the position, instead, a Caucasian, Linda Dromgoole ("Ms. Dromgoole") was hired and was paid an annual salary of $88,000, which would have been an increase in salary for the Asian American employee who had originally applied for the position.

50.    In another instance, an Asian American employee, Eugene Lam ("Mr. Lam") resigned in late 2003.

51.    At the time of his resignation he was earning approximately $65,000.

52.    Mr. Lan was replaced by a Caucasian female at a salary of approximately $85,000.

53.    A Caucasian employee, despite insubordinate e-mails to Ms. Dornfeld and James Waters ("Mr. Waters"), a recent hire who is Caucasian and who eventually replaced Mr. Jung, was never disciplined, and instead, received good reviews in his annual evaluation.

54.    Mr. Jung received a negative performance evaluation in December 2003 from Defendant Skadden Arps's Human Resources Department, but contrary to their stated disciplinary action procedure, Defendant Skadden Arps failed to provide a memorandum of the disciplinary action until several months after the alleged complaint, and then only after Mr. Jung made several requests for the memorandum.

7

55.    In an effort to appear to be in compliance with their stated disciplinary action procedure, Defendant Skadden Arps backdated the memorandum to December 11 2003.

56.    In trying to understand the negative December 2003 performance evaluation, Mr. Jung spoke with Mr. Waters.

57.    Mr. Waters told Mr. Jung that the negative performance evaluation was "All Susan's [Dornfeld] doing."

58.    Despite Skadden Arps's stated policy of strict adherence to established disciplinary action procedures, Mr. Jung was never given an initial warning for his alleged poor performance.

59.    In March 2004, Mr. Jung reported Ms. Dornfeld's discriminatory misconduct to Earle Yaffa ("Mr. Yaffa"), a managing director at Skadden Arps.

60.    This action was in keeping with Defendant Skadden Arps's stated procedure for reporting workplace discrimination.

61.    Mr. Yaffa failed to take any action, and the following month, in April 2004, Mr. Jung received a written warning concerning his performance.

62.    Mr. Jung made several other reports of discrimination, but no action was taken.

63.    In or about March 2004, the law firm of Sklover & Associates, predecessor counsel to Brendan Chao, communicated in writing with Defendant Skadden Arps, and informed them of Mr. Jung's complaints of racial discrimination.

64.    Henry Baer, an of-counsel attorney to Skadden Arps, claims he investigated these complaints, but failed to speak to Mr. Jung or any of the other employees who had been discriminated against.

8

65.     Other employees who are members of racial minorities complained of discrimination to Laura Henschel, the director of Human Resources at Skadden Arps, but she also failed to take any action.

66.     Repeated criticism of Mr. Jung's performance, despite his previous satisfactory performance, as reflected in his previous performance evaluations, culminated in his dismissal on June 7, 2004.

67.     Toward the end of his employment with Skadden Arps, Skadden Arps attempted to force Mr. Jung to resign without receiving a promised relocation bonus.

68.     Upon information and belief, Skadden Arps did not try to withhold the relocation bonus of similarly-situated Caucasian employees.

69.     Based on the above facts, Mr. Jung believes that his race and national origin played an impermissible role in Skadden Arps's discriminatory treatment of him, and his reporting of the discriminatory conduct resulted in Skadden Arps's retaliatory termination of his employment.

70.     Mr. Jung also believes that Skadden Arps has participated in a pattern and practice of discriminating against members of racial minority employees, Asian Americans in particular.

71.     The reason or reasons given by Defendants for terminating Plaintiff's employment is/are a pretext for discrimination.

9

## FIRST CAUSE OF ACTION
(National Origin and Race
Discrimination Under Title VII)

72.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 71 as if separately set forth herein.

73.    At all relevant times, Plaintiff was an "employee" of Defendant Skadden Arps for purposes of Title VII.

74.    Plaintiff is Asian-American, and at all relevant times Defendant knew Plaintiff to be Asian-American of Korean descent.

75.    Upon information and belief, Defendant Skadden Arps is an "employer" for purposes of Title VII.

76.    Ms. Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

77.    Upon information and belief, Ms. Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

78.    Ms. Dornfeld's conduct, both to Plaintiff and to his minority co-workers, permeated Plaintiff's work environment with discriminatory harassment.

79.    This harassment detrimentally affected Plaintiff, and was sufficiently severe or pervasive as to alter the terms and conditions of his employment and create a hostile, abusive working environment.

80.    The acts complained of herein also constitute a continuing violation because Skadden Arps had notice and knowledge of Ms. Dornfeld's harassment of Plaintiff but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice.

10

81.     Plaintiff reasonably took advantage of preventive and corrective opportunities provided by Skadden Arps by reporting Ms. Dornfeld's discrimination to several supervisors at Skadden Arps, as Skadden Arps had instructed him to do.

82.     Skadden Arps failed to exercise reasonable care to prevent and promptly correct Ms. Dornfeld's discriminatory behavior.

83.     Defendants' actions constitute discrimination against Plaintiff because of his national origin and race with respect to the terms, conditions, and privileges of his employment, in violation of Title VII.

84.     Upon information and belief, Defendant's discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights.  Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

85.     Any explanation given by Defendant for its conduct is a pretext for national origin and race discrimination.

### SECOND CAUSE OF ACTION
(National Origin and Race Discrimination Under
The New York State Human Rights Law)

86.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 85 as if separately set forth herein.

87.     At all relevant times, Plaintiff was an "employee" under § 292(6) of the New York State Human Rights Law.

88.     Upon information and belief, Defendant Skadden Arps is an "employer" under § 292(5) of the New York State Human Rights Law.

11

89.     Ms. Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

90.     Upon information and belief, Ms. Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

91.     Plaintiff is Asian American, and at all relevant times Defendant knew Plaintiff to be Asian-American of Korean descent.

92.     Throughout his employment with Defendant, Plaintiff was qualified for his position, and performed his duties in a professional and competent manner.

93.     Defendant discriminated against Plaintiff because of his national origin and race.

94.     Defendant's conduct toward Plaintiff constitutes willful discrimination on the basis of national origin and race in violation of § 296 of the New York State Human Rights Law.

95.     As a result of Defendant's discriminatory conduct, Plaintiff has suffered substantial damages, including emotional distress, and lost wages and benefits in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
(National Origin and Race Discrimination in
Violation of New York City Human Rights Law)

96.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 95 as if separately set forth herein.

97.     Plaintiff served a copy of the amended complaint in this action upon the New York City Commission on Human Rights and New York City Corporation Counsel prior to commencing this action.

98.     Plaintiff is a "person" under § 8-102(1) of the New York City Administrative Code.

12

99.    Upon information and belief, Defendant is both an "employer" and "covered entity" subject to the provisions of the New York City Human Rights Law under § 8-102(5) and (17) of the Administrative Code.

100.    Defendant violated the New York City Human Rights Law by discriminating against Plaintiff because of his national origin and race in the terms, conditions and privileges of his employment, as described more fully above.

101.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

102.    Since Defendant's discriminatory actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's statutory rights, Plaintiff also requests an award of punitive damages under the New York City Human Rights Law

## FOURTH CAUSE OF ACTION
(Retaliation Under Title VII)

103.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 102 as if separately set forth herein.

104.    At all relevant times, Plaintiff was an "employee" of Defendant Skadden Arps for purposes of Title VII.

105.    Upon information and belief, Defendant Skadden Arps is an "employer" for purposes of Title VII.

106.    Ms. Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

13

107.  Plaintiff reported the discrimination he faced to Mr. Yaffa, a managing director at Skadden Arps. Such reporting was the proper method for an employee of Skadden Arps in Mr. Jung's position to make a charge of discrimination, or to otherwise oppose unlawful discriminatory practices.

108.  Mr. Yaffa failed to take any action following Mr. Jung's complaint and, in fact, criticism of Mr. Jung increased and his performance evaluation scores decreased in the following months, leading to his termination of employment in June 2004.

109.  Plaintiff engaged in protected activity under Title VII by (1) personally asserting that he was being discriminated against; and (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

110.  Defendant treated Plaintiff differently in retaliation for Plaintiff's reporting Defendant's discriminatory acts.

111.  Defendant's actions constitute retaliation against Plaintiff because of his opposition of unlawful employment practices and because of his making a charge of such discrimination, both in violation of Title VII.

112.  Upon information and belief, Defendant's retaliatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights. Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
(Retaliation Under Under The
New York State Human Rights Law)

113.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 112

14

as if separately set forth herein.

114.    At all relevant times, Plaintiff was an "employee" under § 292(6) of the New York State Human Rights Law.

115.    Upon information and belief, Defendant Skadden Arps is an "employer" under § 292(5) of the New York State Human Rights Law.

116.    Ms. Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

117.    Upon information and belief, Ms. Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

118.    Plaintiff engaged in protected activity under the New York State Human Rights Law by (1) personally asserting that he was being discriminated against; (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

119.    By its actions in terminating Plaintiff's employment, Defendant has retaliated against Plaintiff in violation of the New York State Human Rights Law, §296(1)(e).

120.    As a result of Defendant's actions, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
(Retaliation Under The New York
City Human Rights Law)

121.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 120 as if separately set forth herein.

15

122.    Plaintiff is a "person" under § 8-102(1) of the New York City Administrative Code.

123.    Upon information and belief, Defendant is both an "employer" and "covered entity" subject to the provisions of the New York City Human Rights Law under § 8-102(5) and (17) of the Administrative Code.

124.    Plaintiff engaged in protected activity under the New York City Human Rights Law by (1) personally asserting that he was being discriminated against; (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

125.    By its actions in terminating Plaintiff's employment, Defendant has retaliated against Plaintiff in violation of the New York City Human Rights Law, §8-107(7).

126.    As a result of Defendant's actions, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

127.    Defendant's actions were taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York City Human Rights Law.

WHEREFORE, Plaintiff demands judgment as follows:

A.    On the First, Third, Fourth, and Sixth Causes of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at trial, as well as attorneys' fees, costs and interest, and an Order directing Skadden Arps to cease and desist from its discriminatory practices

B.    On the Second and Fifth Causes of Action, back pay and benefits and front pay and benefits, plus compensatory damages, all in amounts to be determined at trial, as well as attorneys'

16

fees costs and interest, and an Order directing Skadden Arps to cease and desist from its discriminatory practices;

C.     Such other and further relief as the Court deems appropriate under the circumstances.

Dated: October 28, 2005
      Great Neck, New York

BRENDAN CHAO, ESQ.

By:_____
Brendan Chao (BC 8811)
Attorney for Plaintiff
150 Great Neck Road, Suite 304
Great Neck, New York 11021
(516) 466-2033

TO:    David E. Schwartz, Esq.
       SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP
       Attorney for Defendant
       Four Times Square
       New York, New York 10036

17

# EXHIBIT B

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

This Agreement to Arbitrate Claims (hereinafter
referred to as the "Agreement") is entered into as of
_____ *Sep* _____ *7*, 1998 by and between _Jonathan W. Tracy_
(hereafter referred to as "I" or "me") and Skadden, Arps,
Slate, Meagher & Flom LLP ("the Firm")[1].

1.  <u>Purpose of the Agreement</u>.  I recognize that
differences may arise between me and the Firm during or
following the time I am employed by the Firm, and that those
differences may or may not be related to my status as a
employee.  I also understand that, except where the context
otherwise requires, any reference in this Agreement to the
Firm will also be a reference to all affiliated entities; all
Firm-sponsored benefit plans; the benefit plans' fiduciaries,
administrators and affiliates; and all successors and assigns
of any of them.

2.  <u>Claims Covered by the Agreement</u>.  The Firm and I
mutually consent to the resolution by final and binding
arbitration of all claims or controversies, whether or not
arising out of my employment (or its termination), that the
Firm may have against me or that I may have against the Firm
or its partners, employees or agents in their capacity as
such, including, but not limited to, claims for compensation
due; claims for breach of any contract or covenant (express or
implied); tort claims; claims of discrimination (including,
but not limited to, claims based on race, sex, sexual
preference, religion, national origin, age, marital status,
medical condition, handicap or disability); claims for
benefits (except as set forth in paragraph 3, below); and
claims alleging a violation of any federal, state or other
governmental law, statute, regulation or ordinance
(collectively "Claims"), <u>provided however</u> that Claims shall
not include claims excluded in the section entitled "Claims
Not Covered by the Agreement."  All Claims shall be arbitrated
in accordance with the attached Arbitration Rules and
Procedures, which are expressly incorporated herein and made
part of this Agreement.

---

As used in this Agreement, the term the "Firm" refers
to Skadden, Arps, Slate, Meagher & Flom LLP and its
various affiliates.

Except as otherwise provided in this Agreement, both the Firm and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action in any way related to any Claim covered by this Agreement.

3. <u>Claims Not Covered by the Agreement</u>. Claims I may have for workers' compensation or unemployment compensation benefits are not covered by this Agreement. Also not covered are (a) claims for benefits where a Firm-sponsored benefit plan provides for its own claims procedure and (b) claims by the Firm for injunctive and/or other equitable relief, including but not limited to claims alleging unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which I understand and agree that the Firm may seek and obtain relief from a court of competent jurisdiction.

4. <u>Required Notice of All Claims and Statutes of Limitations</u>. The Firm and I agree that the party seeking to arbitrate a Claim must give written notice of any such Claim to the other party within one (1) year of the date the aggrieved party first has knowledge of the event giving rise to the Claim; otherwise the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would have given more time to pursue the Claim. The written notice shall identify and describe the nature of all Claims asserted and the facts upon which such Claims are based. The notice shall be delivered by hand or sent to the other party by certified or registered mail, return receipt requested.

Written notice to the Firm, or its partners, employees or agents, shall be sent to the Firm's Managing Director at his or her business address. Written notice to me shall be sent to me at the last address recorded in my personnel file.

5. <u>Requirements for Modification or Revocation</u>. This Agreement to Arbitrate shall survive the termination of my employment. It can be revoked or modified only by a writing signed by both me and an authorized representative of the Firm.

2

6.   <u>Sole and Entire Agreement</u>.  This Agreement is the complete agreement of the Firm and me on the subject of the resolution of disputes regarding Claims and supersedes any prior or contemporaneous oral or written understanding on the subject.   I acknowledge that I am not relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

7.   <u>Construction</u>.  If any provision of this Agreement or the Arbitration Rules and Procedures is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity or enforceability of the remainder of the Agreement.

8.   <u>Consideration</u>.  The promises by the Firm and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.

9.   <u>Confidentiality</u>.  It is part of the essence of this Agreement that any Claims hereunder shall be resolved expeditiously and as confidentially as possible.  Accordingly, the Firm and I agree to maintain in strict confidence the existence, arbitration and resolution of any such Claims and not to discuss with or disclose to any other person (other than members of my immediate family) such matters except as may be necessary to obtain legal representation or in connection with the preparation or filing of income tax returns.

3

## Arbitration Rules and Procedures

A.  <u>Commencing the Arbitration</u>.  The Firm and I agree that, except as otherwise provided in this Agreement, any arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") (unless the Firm elects that the arbitration be conducted pursuant to the AAA's National Rules for the Resolution of Employment Disputes) before a panel (the "Panel") of three arbitrators who are licensed to practice law in the State of New York.  The arbitration shall take place at the offices of the AAA in or nearest to the city in which I am or was last employed by the Firm (or, if I am or was last employed in a city outside of the United States, in New York City), unless the Firm and I agree otherwise.

The Panel shall be selected as follows.  The AAA shall give each party a list of eleven (11) arbitrators drawn from its panel of employment dispute arbitrators.  Each party may strike any names on the list it deems unacceptable.  If only three common names remain on the list of each party, those individuals shall be designated as the Panel.  If more than three common names remain on the list of each party, the parties shall strike names alternately until only three remain.  The party who did not initiate the claim shall strike first.  If less than three common names remain on the list of each party, the remaining names shall constitute a partial panel and the AAA shall furnish an additional list or lists until the Panel is selected.

B.  <u>Law To Be Applied</u>.  The Panel shall apply the laws of the State of New York without regard to principles of conflicts of law (including but not limited to laws relating to remedies, damages and limitations periods).  The Panel, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any Claim that all or any part of this Agreement is void or voidable.  The arbitration shall be final and binding upon the parties.

C.  <u>Rules for Conduct of the Arbitration</u>.  The Panel shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the Panel deems necessary.

4

Either party, at its expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of proceedings. Transcripts shall be made available to the Panel and the party who requests the stenographic record. Either party, upon request made at the close of hearing, shall be given leave to file a post-hearing brief. The time for filing such a brief and any page limitation shall be set by the Panel. The Panel shall render an award and opinion in the form typically rendered in such arbitrations. Agreement of two members of the Panel shall be required for each decision or ruling. Such award shall be rendered within thirty (30) days from the date upon which the hearings are declared closed.

D. <u>Pre-Hearing Discovery</u>. Each party shall have the right to take the deposition of no more than three (3) individuals and any expert witness designated by the other party. Each party also shall have the right to propound requests for production of documents to any party. Additional discovery may be had only if the Panel so orders, upon a showing of substantial need.

E. <u>Designation of Witnesses</u>. At least fifteen (15) days before the arbitration, the parties shall exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration.

F. <u>Arbitration Fees and Costs</u>. The party commencing the arbitration shall be responsible for paying any filing fees assessed by the AAA, but the Firm and I will share equally the AAA's administrative fees. In addition, the Firm will pay the Panel's fee. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees, or if there is a written agreement providing for such fees, the Panel may award reasonable attorneys' fees to the prevailing party.

G. <u>Judicial Review</u>. Either party may bring an action pursuant to Article 75 of the New York Civil Practice Law and Rules in any court of competent jurisdiction to compel arbitration under this Agreement and to confirm or enforce an arbitration award.

## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

### SIGNATURE PAGE

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THE FOREGOING MUTUAL AGREEMENT TO ARBITRATE CLAIMS (THE "AGREEMENT"), THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE FIRM AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE FIRM OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

EMPLOYEE

_____
Signature of Employee

Jonathan W. Jin
Print Name of Employee

Sep 8, 1998
Date

_____
Signature of Authorized
Representative of Firm

Director of Human Resources
Title of Authorized
Representative of Firm

12/22/98
Date

6

# EXHIBIT C

**From:**     Robert C. Sheehan (Laurel Henschel)
**To:**        EVERYONE BEI; EVERYONE BOS; EVERYONE BRU;  EVERYONE
CHI; EVERYONE FRA; EVERYONE HKG; EVERYONE HOU; EVERYONE LON;
EVERYONE MOS; EVERYONE NWK; EVERYONE NYCSR01A; EVERYONE
NYCSR02A; EVERYONE NYCSR03A; EVERYONE NYCSR04A; EVERYONE
NYCSR05A; EVERYONE NYCSR06A; EVERYONE NYCSR07A; EVERYONE
NYCSR08A; EVERYONE NYCSR09A; EVERYONE NYCSR10A; EVERYONE
PACIFIC RIM; EVERYONE PAR; EVERYONE RES; EVERYONE SIN;  EVERYONE
SYDNEY; EVERYONE TOR; EVERYONE VIE; EVERYONE WAS; EVERYONE WIL
**Date:**     2/4/02 4:02PM
**Subject:**                                                   M E M O R A N D U M

M E M O R A N D U M

February 4, 2002

TO:   All Personnel
       (Boston, Chicago, Houston, New York, Newark, Reston, Washington, Wilmington
and all International offices)

FROM:    Robert C. Sheehan

     Re:   Mutual Agreement to Arbitrate Claims

          Recent developments in the law governing the arbitration of employment
disputes have caused the Firm to make certain changes to the Mutual Agreement to
Arbitrate Claims (the "Arbitration Agreement") which the Firm adopted in 1997.
Everyone who joined the Firm after the adoption of the Arbitration Agreement signed
such an agreement when s/he joined the Firm. Each of these changes expands your
rights as an employee.

          The changes, which are effective immediately, are as follows:

          •      The Arbitration Rules and Procedures (the "Rules"), in paragraph F on
page 5, presently provide that the party commencing the arbitration is responsible for
paying any filing fees. Because those fees may exceed the filing fees which you would
have to pay if you had gone to court rather than to arbitration, effective immediately, the
Firm will pay the difference, if any, between the filing fee charged by the American
Arbitration Association under the National Rules for the Resolution of Employment
Disputes and any lower fee that would be charged by the court where the claim might
otherwise have been filed.  The balance of paragraph F is unchanged.

          •      In addition to the pre-hearing discovery described in paragraph D of the
Rules, the arbitrators will have the right to order any additional discovery requested by a

party which the arbitrators determine to be necessary and appropriate.

   •     The one-year limitations period set forth in paragraph 4 of the Agreement will continue to apply to claims except in the event and to the extent that a longer limitations period is required by the law of the jurisdiction where the employee was employed when the claim arose.

   If you have any questions about these changes to the Arbitration Agreement and the Rules, please contact Hank Baer at extension 2910 in New York.

# EXHIBIT D

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES*

### AN EQUAL OPPORTUNITY EMPLOYER

## APPLICATION FOR EMPLOYMENT

DATE: _Aug 10, 1998_    POSITION(S) DESIRED: _International Tax_    ☒ **FULL TIME**

_Coordinator_    ☐ **PART TIME**

NAME: _Jonathan  W.  Jung_
(FIRST, MIDDLE, LAST)

ADDRESS: _60  West  Broad  Street,  Apt. 4 J_
(STREET)    (CITY, STATE, ZIP)

TELEPHONE: _(914)  668 - 1363_    ARE YOU OVER THE AGE OF 18? _yes_

Have you previously applied for employment with SASM&F in any office?    ___ yes   _X_ no

    If yes, please explain _____

Have you ever been employed by SASM&F in any of its offices?    ___ yes   _X_ no

    If yes, please explain _____

Are you related to any individual currently employed by SASM&F?    ___ yes   _X_ no

    If yes, to whom are you related? _____

    What is the relationship? _____

How did you hear about SASM&F? _Executive recruiter_____

Are you a U.S. Citizen or otherwise authorized to work in the U.S.?    _X_ yes   ___ no

Are you a Law School graduate?    ___ yes   _X_ no

Are you admitted to practice law in any State or Jurisdiction?    ___ yes   _X_ no

SASM&F LLP and Affiliates is an equal opportunity employer. As such, it adheres to an employment policy which prohibits discriminatory practices or harassment against applicants or employees based on race, color, religion, sex, national origin, age, Vietnam-era or disabled veteran status, citizenship, marital status, sexual orientation, disability (where the applicant or employee is qualified to perform the essential functions of the job with or without reasonable accommodation), or any other legally impermissible factor.

\* Is collectively referred to as SASM&F

rev. 4/97

## EMPLOYMENT HISTORY
### LIST MOST RECENT FIRST

**(IF YOU HAVE A RESUME PLEASE ATTACH IT.  PLEASE NOTE IF YOU WORKED UNDER ANOTHER NAME.)**

**1.**

| Employer _Pricewaterhouse Coopers_ | Dates Employed | | WORK PERFORMED |
|---|---|---|---|
| | From | To | |
| Address _One Canterbury Green_ | 2/1/94 | Continue | _Review tax return and_ |
| Telephone Number(s) _(203) 921-2574_ | Hourly Rate/Salary | | _tax equalization Global_ |
| | Starting | Final | _administrator of payroll_ |
| Job Title _Senior Associate_   Supervisor _Marie Castronova_ | 50,000 | 55,000 | |
| Reason for Leaving | | | |

**2.**

| Employer _MONY_ | Dates Employed | | WORK PERFORMED |
|---|---|---|---|
| | From | To | |
| Address _Eagle Ovington Blvd_ | 6/1/92 | 12/31/93 | _Admin for investments_ |
| Telephone Number(s) | Hourly Rate/Salary | | _and insurance._ |
| | Starting | Final | |
| Job Title _Consultant_   Supervisor _Frank Grasso_ | 30,000 | 34,000 | |
| Reason for Leaving | | | |

**3.**

| Employer | Dates Employed | | WORK PERFORMED |
|---|---|---|---|
| | From | To | |
| Address | | | |
| Telephone Number(s) | Hourly Rate/Salary | | |
| | Starting | Final | |
| Job Title   Supervisor | | | |
| Reason for Leaving | | | |

**4.**

| Employer | Dates Employed | | WORK PERFORMED |
|---|---|---|---|
| | From | To | |
| Address | | | |
| Telephone Number(s) | Hourly Rate/Salary | | |
| | Starting | Final | |
| Job Title   Supervisor | | | |
| Reason for Leaving | | | |

**If you need additional space, please continue on a separate sheet of paper.**

## REFERENCES

### Please list 3 former employers whom we may contact for a reference

| | 1. | 2. | 3. |
|---|---|---|---|
| NAME | _Tom Chu_ | _Frank Grasso_ | |
| POSITION | _Senior Consultant_ | _Manager_ | |
| COMPANY | _E&Y_ | _MONY_ | |
| ADDRESS | _Not available_ | _Not available_ | |
| TELEPHONE NO. | (   ) | (   ) | (   ) |

rev. 4/97

## EDUCATIONAL HISTORY
(PLEASE NOTE IF YOU ATTENDED SCHOOL UNDER ANOTHER NAME)

| NAME OF SCHOOL | DID YOU GRADUATE? | | DEGREES / CERTIFICATES | AREA OF CONCENTRATION |
|---|---|---|---|---|
| SUNY at Buffalo | ☑ YES | ☐ NO | B. S | Economics |
| SUNY at Oldwestbury | ☐ YES | ☒ NO | B A. | Accounting |
| | ☐ YES | ☐ NO | | |

## EXPERIENCE
(ATTACHED RESUME MAY BE SUBMITTED FOR THE FOLLOWING)
**DESCRIBE ANY OTHER EXPERIENCE, TRAINING, AND/OR OTHER ABILITIES RELEVANT TO THE POSITION(S) DESIRED**

Have you ever professionally engaged in, or been employed by any firm that was engaged in, any aspect of the securities business, such as stock brokerage or investment banking?

_____ yes          _X_ no

If so, please describe below the nature of your activities or job responsibilities, the dates thereof and the name and address of each such firm by which you were or are employed.*

Is any member of your household or immediate family engaged professionally in any aspect of the securities business or employed by any firm engaged in any aspect of the securities business?

_____ yes          _X_ no

If so, please identify below each such person, his or her relationship to you, the name and address of his or her employer, and the nature of his or her job responsibilities.*

*If you need additional space, please continue on a separate sheet of paper.

rev. 4/97

| IF APPLYING IN NEW YORK/DELAWARE/ WASHINGTON, D.C./ILLINOIS/ TEXAS/NEW JERSEY | IF APPLYING IN MASSACHUSETTS | IF APPLYING IN CALIFORNIA |
|---|---|---|
| Have you ever been convicted of a felony or misdemeanor other than a traffic violation?<br><br>_____ Yes    _X_ No<br><br>If you answered yes, please provide details below. | Have you ever been convicted of a felony? Within the last 5 years have you been convicted of, or released from incarceration for, a misdemeanor which was not a first offense for drunkenness, simple assault, speeding, a minor traffic violation, an affray, or disturbing the peace?<br><br>_____ Yes    _____ No<br><br>If you answered yes, please provide details below. | Have you ever been convicted of a crime, other than (1) any conviction for which the record has been judicially ordered sealed, expunged or statutorily eradicated, (2) any misdemeanor conviction for which probation has been successfully completed or otherwise discharged and the case has been judicially dismissed, or (3) any misdemeanor conviction concerning the use or possession of marijuana which occurred more than two years ago?<br><br>_____ Yes    _____ No<br><br>If you answered yes, please provide details below. |

**CONVICTION OF A CRIME WILL NOT NECESSARILY DISQUALIFY YOU FROM EMPLOYMENT.**
**IN EACH CASE A DECISION WILL BE MADE BASED ON SUCH FACTORS AS THE NATURE OF THE CRIME AND THE JOB FOR WHICH YOU HAVE APPLIED.**

**IN THE EVENT THAT AN OFFER OF EMPLOYMENT IS MADE, THE OFFER WILL BE SUBJECT TO (A) THE APPLICANT PROVIDING DOCUMENTATION PROVING IDENTITY AND ELIGIBILITY FOR EMPLOYMENT IN THE U.S. AS REQUIRED BY THE IMMIGRATION REFORM AND CONTROL ACT OF 1986, P.L. NO. 99-603 AND (B) SIGNING A MUTUAL AGREEMENT TO ARBITRATE CLAIMS.**

I hereby certify that the facts set forth in the above employment application and attached resume are true and complete to the best of my knowledge. I understand that falsified statements on this application or attached resume shall be considered sufficient cause for denial of employment or, if I am hired, for dismissal.

Further, I understand that, in order to conduct its business, SASM&F maintains strict policies regarding securities trading and confidentiality. I also understand that in furtherance of those policies SASM&F may require certain information about me so it can evaluate my qualifications for employment, including my qualifications for continued employment if I am offered and accept a position with SASM&F. Accordingly, I hereby authorize SASM&F, at its discretion, to investigate my employment history, educational background and financial activities at such times as SASM&F may deem such an investigation advisable. I will cooperate in any such investigation, and I agree to deliver to SASM&F, upon its request, all documents in my possession, custody or control concerning transactions or activities in any bank and/or securities account. I hereby release SASM&F and those parties who may supply information to it from any and all liabilities that my arise out of, or relate to, any such investigation or any information supplied.

I also understand that this application for employment and any other SASM&F documents are not contracts of employment, and that, if hired, I may voluntarily leave my employment or may be discharged by SASM&F with or without notice and with or without cause. I understand that any oral or written statements to the contrary are hereby expressly disavowed and should not be relied upon by me.

_Aug  10  1998_
**DATE**

_(signature)_
**APPLICANT'S SIGNATURE**

rev. 4/97

# EXHIBIT E

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2473
DIRECT FAX
917-777-2473
EMAIL ADDRESS
DESCHWAR@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

October 20, 2005

**VIA FACSIMILE**
Brendan Chao, Esq.
150 Great Neck Road, Suite 304
Great Neck, NY 11021

> RE:  Jonathan Jung v. Skadden, Arps, Slate Meagher &
>       Flom LLP and Susan Dornfeld; 05-CV-4286 (MBM)

Dear Mr. Chao:

I have enclosed a copy of the Mutual Agreement to Arbitrate Claims between Jonathan Jung and Skadden, Arps, Slate, Meagher & Flom LLP (the "Firm") dated September 8, 1998 along with a February 4, 2002 e-mail pertaining thereto (the "Arbitration Agreement"). Paragraph 2 of the Arbitration Agreement provides as follows:

> The Firm and [Mr. Jung] mutually consent to the resolution by final and binding arbitration of all claims or controversies, whether or not arising out of [Mr. Jung's] employment (or its termination), that the Firm may have against [him] or that [he] may have against the Firm or its partners, employees or agents in their capacity as such, including, but not limited to, . . . claims of discrimination (including, but not limited to, claims based on race, sex, sexual preference, religion, national origin, age, marital status, medical condition, handicap or disability) . . . and claims alleging a violation of any federal, state or other governmental law, statute, regulation or ordinance . . . .

The express language of paragraph 2 of the Arbitration Agreement clearly encompasses Mr. Jung's purported Title VII, NYSHRL and NYCHRL claims against the Firm and Ms. Dornfeld. Moreover, it is well established that claims

Brendan Chao, Esq.
October 20, 2005
Page 2

under these statutes are arbitrable. <u>See</u> <u>Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,</u>
191 F.3d 198, 204-05 (2d Cir. 1999) (finding that Title VII claims were subject to
compulsory arbitration); <u>Rice v. Brown Bros. Harriman & Co.,</u> No. 96 Civ. 6326,
1997 WL 129396, at *2 (S.D.N.Y. Mar. 21, 1997) (Mukasey, J.) (compelling
arbitration of NYSHRL and NYCHRL claims) (citing <u>Fletcher v. Kidder, Peabody &</u>
<u>Co.,</u> 619 N.E.2d 998 (N.Y. 1993), <u>cert. denied,</u> 510 U.S. 933); <u>see also</u> <u>Perry v. New</u>
<u>York Law Sch.,</u> No. 03 Civ. 9221, 2004 WL 1698622, at *2 (S.D.N.Y. July 28,
2004) (compelling arbitration of plaintiff's action alleging violations of Title VII, the
NYSHRL and the NYCHRL).

Finally, I note that the existence of the Arbitration Agreement should
not come as a surprise. First, Mr. Jung signed and received the Arbitration
Agreement. Second, in April 2004 my colleague, Henry Baer, informed your
predecessor counsel, Michael Anastasiades of Sklover & Associates, LLC, that any
claims Mr. Jung might bring would be subject to arbitration. Third, defendants
reminded Mr. Jung of their ability to compel arbitration by reserving their right to do
so on the first page of the Memorandum of Law in Support of Defendants' Motion to
Dismiss the First, Third, Fourth and Sixth Causes of Action in Plaintiff's Complaint.
(<u>See</u> footnote 2.)

In any event, once you have reviewed the Arbitration Agreement, I
trust that you will conclude that Mr. Jung's claims are arbitrable. If that is the case,
defendants request that Mr. Jung consent to a stay of the pending federal court action
so that Mr. Jung's claims may be resolved through arbitration before the American
Arbitration Association as contemplated by the Arbitration Agreement.

I look forward to your response.

Very truly yours,

David E. Schwartz

Enclosures

# EXHIBIT F

# BRENDAN CHAO
ATTORNEY AND COUNSELOR AT LAW

230 PARK AVENUE, SUITE 864
NEW YORK, NEW YORK 10169
(212) 699-0852
FACSIMILE: (212) 867-4755

E-MAIL: bchao@bchaolaw.com
DIRECT DIAL: (516) 466-2033

150 GREAT NECK ROAD, SUITE 304
GREAT NECK, NEW YORK 11021
(516) 466-2033
FACSIMILE: (516) 466-2007

October 28, 2005

David E. Schwartz, Esq.
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM  LLP
Four Times Square
New York, New York 10036

Re:    Jonathan Jung v. Skadden Arps, et al.
        Amended Complaint in Civil Case No. 05 CV 4286(MBM)

Dear Mr. Schwartz:

Further to Judge Mukasey's Order, enclosed is Plaintiff's Amended Complaint. I have reviewed the document entitled "Mutual Agreement to Arbitrate Claims" that you sent to me via facsimile on October 20, 2005. Mr. Jung contests its enforceability.

Please forward all future correspondence to the Great Neck address noted on my firm's letterhead.

Sincerely yours,

Brendan Chao

BC/jkl
Enc.

# EXHIBIT G

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2473
DIRECT FAX
917-777-2473
EMAIL ADDRESS
DESCHWAR@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEWARK
PALO ALTO
RESTON
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

November 1, 2005

Via Facsimile
Brendan Chao, Esq.
150 Great Neck Road
Suite 304
Great Neck, New York 11021

> RE:    Jonathan Jung v. Skadden, Arps, Slate, Meagher &
> Flom, LLP; 05 CV 4286 (MBM)

Dear Mr. Chao:

I am in receipt of plaintiff's Amended Complaint dated October 28, 2005 (the "Amended Complaint") and your letter of the same date.

First, defendant Skadden, Arps, Slate, Meagher & Flom LLP disagrees with plaintiff's contention that the parties' Mutual Agreement to Arbitrate Claims is not enforceable and expressly reserves all of its rights to compel arbitration of this matter.

Second, it is clear from the following allegations of the Amended Complaint that plaintiff has not -- and cannot -- set forth a valid claim for retaliation under the New York City Human Rights Law ("NYCHRL"):

- Plaintiff's department relocated from New York City to White Plains in or about March 2003. (Am. Compl. ¶ 28.)

- Plaintiff first complained about alleged racial discrimination in or about March 2004, approximately one year after his employment was transferred to the White Plains office. (Am. Compl. ¶¶ 59, 63.)

Brendan Chao
November 1, 2005
Page 2

- Plaintiff's employment with defendant terminated on June 7, 2004, approximately fifteen months after his move to the White Plains office. (Am. Compl. ¶ 66.)

Because Mr. Jung had been employed in White Plains for well more than a year prior to his termination, not to mention that the alleged protected activity did even not occur until well after Mr. Jung's employment transferred to White Plains, there can be absolutely no retaliatory conduct impacting Mr. Jung in New York City as would be required to set forth a valid NYCHRL claim. See e.g. Casper v. Lew Lieberbaum & Co., Inc., No. 97 Civ. 3016, 1998 WL 150993, at * 4-5 (S.D.N.Y. Mar. 31, 1998) (granting defendants' motion to dismiss plaintiff's retaliation claim under the NYCHRL because the termination impacted employment in Garden City, New York, not in New York City). Accordingly, plaintiff's Sixth Cause of Action in the Amended Complaint is facially defective and plaintiff should voluntarily dismiss it. Please let me know if plaintiff will do so.

I look forward to your response.

Very truly yours,

David E. Schwartz

cc:    Henry P. Baer

# EXHIBIT H

# BRENDAN CHAO
### ATTORNEY AND COUNSELOR AT LAW

230 PARK AVENUE, SUITE 884
NEW YORK, NEW YORK 10169
(212) 699-0852
FACSIMILE: (212) 867-4755

E-MAIL: bchao@bchaolaw.com
DIRECT DIAL: (516) 466-2033

150 GREAT NECK ROAD, SUITE 304
GREAT NECK, NEW YORK 11021
(516) 466-2033
FACSIMILE: (516) 466-2007

November 1, 2005

VIA FACSIMILE (212) 735-2000
David E. Schwartz, Esq.
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

   Re: Jonathan Jung v. Skadden Arps, et al.
     Civil Case No. 05 CV 4286(MBM)

Dear Mr. Schwartz:

   I received your correspondence today regarding Count 6 in Mr. Jung's Amended Complaint. Mr. Jung declines to voluntarily dismiss Count 6.

          Sincerely yours,

          Brendan Chao

BC/jkl