UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JONATHAN JUNG,

                :

         Plaintiff,

                :

      - against -               05-CV-4286 (MBM)

                :

SKADDEN, ARPS, SLATE, MEAGHER &     ECF Case
FLOM, LLP,

                :

         Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ATTORNEYS FOR DEFENDANT
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

BOROUGH OF MANHATTAN

CITY OF NEW YORK

NEW YORK 10036-6522

(212) 735-3000

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

    A.    Mr. Jung's Education And Employment Background ................................ 3

    B.    Mr. Jung Was Informed Of The Arbitration Agreement Prior To
    Commencing Employment With The Firm ............................................... 4

    C.    The Unambiguous Terms Of The Arbitration Agreement Cover Mr.
    Jung's Claims ............................................................................................. 4

    D.    Plaintiff's Execution Of The Arbitration Agreement Was Knowing
    And Voluntary ............................................................................................ 6

    E.    Procedural History ..................................................................................... 6

ARGUMENT

THIS COURT SHOULD COMPEL ARBITRATION OF MR. JUNG'S
CLAIMS AND STAY THIS ACTION PENDING COMPLETION OF THE
ARBITRATION PROCEEDING ................................................................................... 8

    A.    The FAA Policy Favors Arbitration Of The Claims Presented Here ......... 8

    B.    Plaintiff Must Submit His Claims To Arbitration ..................................... 9

        1.    The Arbitration Agreement Is A Valid Agreement To
        Arbitrate ......................................................................................... 10

        2.    Mr. Jung's Claims Are Within The Scope Of The
        Arbitration Agreement ................................................................... 12

        3.    Mr. Jung's Statutory Discrimination Claims Are Arbitrable ........ 14

        4.    This Entire Action Should Be Stayed Because All Of Mr.
        Jung's Claims Are Arbitrable ........................................................ 15

    C.    The Arbitrators Have "Exclusive Authority" To Determine The
    Applicability And Enforceability Of The Arbitration Agreement ........... 16

CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

Alemac Ins. Servs., Inc. v. Risk Transfer Inc., No. 03 Civ. 1162, 2003 WL
    22024070 (S.D.N.Y. Aug. 28, 2003)...................................................................... 13

Beletsis v. Credit Suisse First Boston, Corp., No. 01 Civ. 6266, 2002 WL
    2031610 (S.D.N.Y. Sept. 4, 2002) ...................................................................... 15

Chamois v. Countrywide Home Loans, No. 02 Civ. 9550, 02 Civ. 9553,
    2003 WL 23022033 (S.D.N.Y. Dec. 29, 2003)............................... 9, 10, 12, 14, 15

Cicchetti v. Davis Selected Advisors, No. 02 Civ 10150RMB, 2003 WL
    22723015 (S.D.N.Y. Nov. 17, 2003).................................................................... 14

Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001).............................................. 2, 8

Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc., 191 F.3d 198 (2d Cir. 1999) ........... 14, 15

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) ................................. 10, 16

Fletcher v. Kidder, Peabody & Co., Inc., 81 N.Y.2d 623, 601 N.Y.S.2d 686
    (1993).................................................................................................................. 14

Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840 (2d Cir. 1987) ................. 2, 9, 12

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) .......................................... 2

Gruber v. Louis Hornick & Co., Inc., No. 02 Civ. 5092, 2003 WL 21222541
    (S.D.N.Y. May 23, 2003)..................................................................................... 10

HD Brous & Co., Inc. v. Mrzyglocki, No. 03 Civ. 8385, 2004 WL 376555
    (S.D.N.Y. Feb. 26, 2004)..................................................................................... 16

Martens v. Smith Barney, Inc., 238 F. Supp. 2d 596 (S.D.N.Y. 2002) .......................... 14

Martin v. SCI Mgmt. L.P., 296 F. Supp. 2d 462 (S.D.N.Y. 2003).................................. 15

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)............. 9

Moorning-Brown v. Bear, Stearns & Co., Inc., No. 99 Civ. 4130 JSR HBP, 1999
    WL 1063233 (S.D.N.Y. Nov. 23, 1999)............................................................... 14

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) .................... 8

Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72 (2d Cir. 1998).............................. 12, 13

PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996).............................................. 16

<u>Perry v. New York Law Sch.</u>, No. 03 Civ. 9221, 2004 WL 1698622 (S.D.N.Y.
   July 28, 2004)................................................................................................. 2, 15

<u>Pilanski v. Metro. Life Ins. Co.</u>, No. 95 Civ. 10292, 1996 WL 622024 (S.D.N.Y.
   Oct. 28, 1996)................................................................................................ 11, 15

<u>Prudential Lines, Inc. v. Exxon Corp.</u>, 704 F.2d 59 (2d Cir. 1983)................................. 12

<u>Rice v. Brown Bros. Harriman & Co.</u>, No. 96 Civ. 6326, 1997 WL 129396
   (S.D.N.Y. Mar. 21, 1997) ........................................................ 10, 12, 13, 14, 15

<u>Schuetz v. CS First Boston Corp.</u>, No. 96 Civ. 5557, 1997 WL 452392 (S.D.N.Y.
   Aug. 8, 1997)................................................................................................... 10

<u>Tarulli v. Circuit City Stores, Inc.</u>, 333 F. Supp. 2d 151 (S.D.N.Y. 2004)..................... 11

<u>Thomas James Assocs., Inc. v. Jameson</u>, 102 F.3d 60 (2d Cir. 1996)............................. 8

<u>Thomson-CSF, S.A. v. Am. Arbitration Ass'n</u>, 64 F.3d 773 (2d Cir. 1995)................... 10

<u>Tuskey v. Volt Info. Scis., Inc.</u>, No. 00 Civ. 7410DABGWG, 2001 WL 873204
   (S.D.N.Y. Aug. 3, 2001) ............................................................................... 13

<u>Williams v. Parkell Prods., Inc.</u>, 91 F. App'x 707 (2d Cir. 2003)................................... 11

<u>Wright v. SFX Entm't Inc.</u>, No. 00 CIV 5354SAS, 2001 WL 103433 (S.D.N.Y.
   Feb. 7, 2001) ................................................................................................. 15

**<u>STATUTES</u>**                                                                    **<u>PAGE(S)</u>**

9 U.S.C. §§ 1-16 .......................................................................................1, 8, 9, 15

Defendant Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm") respectfully submits this memorandum of law in support of its motion to compel arbitration and stay the instant action pending completion of the arbitration proceeding, based upon the Mutual Agreement to Arbitrate Claims between Jonathan Jung ("Mr. Jung" or "Plaintiff") and Skadden, Arps dated September 8, 1998 along with a February 4, 2002 memorandum pertaining thereto (the "Arbitration Agreement"), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.[1]

## PRELIMINARY STATEMENT

Mr. Jung is attempting to avoid the unambiguous and enforceable Arbitration Agreement which he voluntarily executed upon the commencement of his employment with Skadden, Arps by pursuing employment discrimination claims against the Firm in federal court.[2]  His attempt should be rejected by the Court, especially in light

---

[1]    A copy of the Amended Complaint, dated October 28, 2005 (the "Amended Complaint"), is attached as Exhibit A to the accompanying Declaration of David E. Schwartz dated November 9, 2005 (the "Schwartz Decl."); a copy of the Arbitration Agreement is attached as Exhibits B and C thereto; a copy of the Firm's Application for Employment completed and signed by Mr. Jung on August 10, 1998 is attached as Exhibit D thereto; a copy of a letter from the Firm's counsel to Plaintiff's counsel dated October 20, 2005, requesting that Plaintiff comply with the Arbitration Agreement, is attached as Exhibit E thereto; a copy of a letter from Plaintiff's counsel to the Firm's counsel dated October 28, 2005, stating Plaintiff's opposition to the Arbitration Agreement, is attached as Exhibit F thereto; a copy of a letter from the Firm's counsel to Plaintiff's counsel dated November 1, 2005, seeking Plaintiff's agreement to voluntarily dismiss his NYCHRL retaliation claim in the Amended Complaint, is attached as Exhibit G thereto; and a copy of a letter from Plaintiff's counsel to the Firm's counsel dated November 1, 2005, refusing to dismiss Plaintiff's NYCHRL retaliation claim, is attached as Exhibit H thereto.

[2]    The Amended Complaint purports to allege discrimination based on Mr. Jung's national origin and race and retaliation under the Administrative Code of the City of New York, as amended §§ 8-101 et seq. (the "New York City Human Rights Law" or "NYCHRL"), the New York State Executive Law, as amended, §§ 290 et seq. (the "New York State Human Rights Law" or "NYSHRL"), and Title VII of the Civil

of the strong federal policy favoring arbitration of employment disputes.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001) (identifying specific benefits of arbitration in the employment context); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (noting, in an age discrimination case, that "provisions [of the FAA] manifest a 'liberal federal policy favoring arbitration agreements'" (citation omitted)).  Indeed, even absent this strong policy and the accompanying presumption that arbitration agreements are enforceable, the claims asserted by Mr. Jung are clearly arbitrable given that:

> (1) Mr. Jung signed the Arbitration Agreement as a condition of his employment with the Firm;[3]

> (2) By its terms, the Arbitration Agreement explicitly covers all of the claims asserted by Mr. Jung; and

> (3) Mr. Jung's Title VII, NYSHRL and NYCHRL claims are not subject to any congressional exceptions from arbitrability.

See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) (setting forth the factors to be utilized when assessing a motion to compel arbitration and stay proceedings); Perry v. New York Law Sch., No. 03 Civ. 9221, 2004 WL 1698622, at *2

---

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) et seq. ("Title VII"), respectively.

[3]    For purposes of this Memorandum of Law, both the Mutual Agreement to Arbitrate Claims between Mr. Jung and the Firm, signed by Mr. Jung on September 8, 1998, and the February 4, 2002 memorandum pertaining thereto are collectively referred to as the Arbitration Agreement.  Skadden, Arps recognizes that Mr. Jung signed only the Mutual Agreement to Arbitrate Claims.  The February 4, 2002 memorandum provides additional benefits to employees who arbitrate disputes with the Firm.

(S.D.N.Y. July 28, 2004) (compelling arbitration of plaintiff's Title VII, NYSHRL and NYCHRL claims).[4]

Despite the unequivocal language of the Arbitration Agreement mandating that Mr. Jung's claims be resolved by arbitration, the clear policy favoring arbitration of employment disputes and the Firm's request that Mr. Jung comply with the Arbitration Agreement, Mr. Jung offers no explanation for his claim that the agreement is unenforceable and his refusal to submit his claims to arbitration. Accordingly, Skadden, Arps requests that this Court compel arbitration of Mr. Jung's claims and stay this proceeding.

## STATEMENT OF FACTS

A.    **Mr. Jung's Education And Employment Background**

Skadden, Arps employed Mr. Jung in its Tax and Investments Department from September 8, 1998 through June 7, 2004. (Am. Compl. ¶¶ 13, 66.) In his positions with the Firm, first as Tax Coordinator and later as Tax Supervisor, Mr. Jung was supposed to manage and oversee quarterly tax payments for international partners, advise attorneys on the guidelines, policies, costs and compliance with respect to various tax issues and manage Skadden, Arps's expatriate tax issues. (Am. Compl. ¶¶ 13, 14, 19.) Mr. Jung has a degree in economics from the University of Buffalo and was employed by Price Waterhouse Coopers for several years prior to accepting employment with Skadden, Arps. (Am. Compl. ¶ 45; Schwartz. Decl. Ex. D.) His employment was ultimately terminated by the Firm for consistent poor performance.

---

[4]    For the Court's convenience, copies of all unreported decisions referred to herein are submitted in an accompanying "Compendium of Unreported Cases."

B.    **Mr. Jung Was Informed Of The Arbitration Agreement
      Prior To Commencing Employment With The Firm**

   When Mr. Jung applied for a position with Skadden, Arps, he completed

and signed the Firm's Application for Employment.  (Schwartz Decl. Ex. D.)  The

Application for Employment stated, in bold capital letters, as follows:

> **IN THE EVENT THAT AN OFFER OF EMPLOYMENT IS
> MADE, THE OFFER WILL BE SUBJECT TO . . . SIGNING
> A MUTUAL AGREEMENT TO ARBITRATE CLAIMS.**

(Id.)

C.    **The Unambiguous Terms Of The
      Arbitration Agreement Cover Mr. Jung's Claims**

   Prior to the commencement of his employment with Skadden, Arps, Mr.

Jung signed the Arbitration Agreement, in which he expressly agreed to:

> the resolution by final and binding arbitration of all claims or
> controversies, whether or not arising out of [his] employment (or
> its termination), that the Firm may have against [him] or that [he]
> may have against the Firm or its partners, employees or agents in
> their capacity as such, including, but not limited to, . . . claims of
> discrimination (including, but not limited to, claims based on race,
> sex, sexual preference, religion, national origin, age, marital status,
> medical condition, handicap or disability) . . . and claims alleging a
> violation of any federal, state or other governmental law, statute,
> regulation or ordinance (collectively "Claims")….All Claims shall
> be arbitrated in accordance with the attached Arbitration Rules and
> Procedures, which are expressly incorporated herein and made part
> of this Agreement.

(Schwartz Decl. Ex. B at 1, ¶ 2.)

   Pursuant to the Arbitration Agreement, including its incorporated

Arbitration Rules and Procedures, the parties agreed that:

- any Claims would be submitted to final and binding arbitration under the
  auspices of the American Arbitration Association ("AAA") (id. at 4, ¶ A.);

- any Claims would be decided by a neutral panel of three arbitrators who must be attorneys licensed to practice law in New York (id.);

- any arbitration would be conducted under the AAA's Commercial Arbitration Rules or National Rules for the Resolution of Employment Disputes, which allow the parties to obtain full and adequate relief, including any remedy or relief that would have been available to the parties had the matter been heard in court (id. at 4, ¶ A and 5, ¶ F; see also Rule 34(d), National Rules for the Resolution of Employment Disputes (eff. Sep. 15, 2005); Rule R-43, Commercial Arbitration Rules (eff. Sep. 15, 2005)[5];

- the parties would be entitled to conduct pre-hearing discovery, have the right to propound written requests for documents and take depositions of fact and expert witnesses (Schwartz Decl. Ex. B at 5, ¶ D; Schwartz Decl. Ex. C);

- the arbitrators would be empowered to award attorneys' fees to the prevailing party on a statutory or contractual claim that provides for such relief (Schwartz Decl. Ex. B at 5, ¶ F); and

- Skadden, Arps would be responsible for paying any portion of the AAA filing fee which would exceed applicable court filing fees and the entire fee of the arbitration panel (id.; Schwartz Decl. Ex. C).

The parties further agreed that the AAA arbitrators, "and not any federal, state or local court," shall have "exclusive authority" to decide whether the Arbitration Agreement is enforceable as a matter of law:

> The [Arbitration] Panel, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of [the Arbitration] Agreement, including but not limited to any Claim that all or any part of [the Arbitration] Agreement is void or voidable.

(Id. at 4, ¶ B.)

---

[5]    The AAA's rules are published at www.adr.org/RulesProcedures.

D.    **Plaintiff's Execution Of The Arbitration
      <u>Agreement Was Knowing And Voluntary</u>**

Plaintiff's execution of the Arbitration Agreement was undeniably knowing and voluntary.  The Firm's Application for Employment states clearly and unambiguously that each applicant is required to execute the Arbitration Agreement as a condition of employment.  (Schwartz Decl. Ex. D.)  Understanding this requirement, Mr. Jung, a college graduate, signed the Arbitration Agreement immediately beneath a statement which provides, in capital letters, as follows:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ
> THE FOREGOING MUTUAL AGREEMENT TO
> ARBITRATE CLAIMS (THE "AGREEMENT"), THAT I
> UNDERSTAND ITS TERMS, THAT ALL
> UNDERSTANDINGS AND AGREEMENTS BETWEEN
> THE FIRM AND ME RELATING TO THE SUBJECTS
> COVERED IN THE AGREEMENT ARE CONTAINED
> IN IT, AND THAT I HAVE ENTERED INTO THE
> AGREEMENT VOLUNTARILY AND NOT IN
> RELIANCE ON ANY PROMISES OR
> REPRESENTATIONS BY THE FIRM OTHER THAN
> THOSE CONTAINED IN THIS AGREEMENT ITSELF.

(<u>Id.</u> at 6.)

E.    **<u>Procedural History</u>**

Despite having signed the Arbitration Agreement, on April 29, 2005 Mr. Jung filed a Complaint with this Court alleging employment discrimination claims under Title VII, NYSHRL and NYCHRL against the Firm and Susan Dornfeld, the Firm's Treasurer.  Before answering the complaint, the Firm and Ms. Dornfeld filed a motion to dismiss Mr. Jung's Title VII and NYCHRL claims in which they expressly reserved their right to compel arbitration of Mr. Jung's claims.  (<u>See</u> Mem. of Law in Supp. of Defs.' Mot. to Dismiss the First, Third, Fourth and Sixth Causes of Action in Pl.'s Compl. at 1 n.2.)

On October 20, 2005, this Court read its decision on the record, granting Skadden, Arps and Ms. Dornfeld's motion to dismiss Mr. Jung's Title VII and NYCHRL claims, and granting Plaintiff leave to file an amended complaint to cure the defects identified by the motion to dismiss. After the Court rendered its decision, the Firm reminded Plaintiff's counsel that any claims Plaintiff might have would be covered by the Arbitration Agreement.[6] That same day, the Firm sent to Plaintiff's counsel a copy of the Arbitration Agreement, under cover of a letter citing relevant terms of the Arbitration Agreement and the controlling case law demonstrating that Mr. Jung's Title VII, NYSHRL and NYCHRL claims are clearly arbitrable. (Schwartz Decl. Ex. E.) Plaintiff responded by serving the Amended Complaint on the Firm on October 28, 2005 together with a one-sentence rejection of the Firm's request that he comply with the Arbitration Agreement.[7] (Id. at Ex. F.)

---

[6]    The Firm had also advised Mr. Jung's prior counsel in or about April 2004 that Mr. Jung was required to pursue his claims through arbitration.

[7]    The Amended Complaint purports to set forth a NYCHRL retaliation claim even though Mr. Jung's allegations show that he had been employed in the Firm's White Plains, New York office for approximately one year before he complained about any alleged discrimination and for more than a year before his employment was terminated. On November 1, 2005, the Firm wrote to Plaintiff's counsel and asked that Plaintiff voluntarily dismiss this claim. (Schwartz Decl. Ex. G.) That same day, Plaintiff's counsel sent a two-line letter declining to dismiss this claim. (Id. at Ex. H.) For the reasons set forth in the Firm's November 1, 2005 letter, this NYCHRL retaliation claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

### THIS COURT SHOULD COMPEL ARBITRATION
### OF MR. JUNG'S CLAIMS AND STAY THIS ACTION
### PENDING COMPLETION OF THE ARBITRATION PROCEEDING

A.    **The FAA Policy Favors Arbitration Of The Claims Presented Here**

In Circuit City Stores, Inc. v. Adams, the United States Supreme Court

held that arbitration agreements in the employment arena, other than those agreements

covering workers engaged in transportation, are covered by the Federal Arbitration Act, 9

U.S.C. §§ 1 et seq. (the "FAA").  532 U.S. at 120-21.  Accordingly, the instant motion to

compel arbitration and stay proceedings of Mr. Jung's claims is governed by the FAA.

Section 2 of the FAA provides that an arbitration clause "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  The United States Supreme Court has

emphasized that the FAA embodies a federal policy strongly favoring arbitration and

requires courts to compel arbitration unless there is no conceivable way in which a

dispute could come within an arbitration provision:

> Section 2 [of the FAA] is a congressional declaration of a liberal
> federal policy favoring arbitration agreements . . . . The Arbitration
> Act establishes that, as a matter of federal law, any doubts
> concerning the scope of arbitrable issues should be resolved in
> favor of arbitration, whether the problem at hand is the
> construction of the contract language itself or an allegation of
> waiver, delay, or a like defense to arbitrability.

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)

(citations omitted).  The Second Circuit similarly has held that the strong presumption in

favor of arbitration requires a court to compel arbitration "'unless it may be said with

positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute.'"  Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60, 65

(2d Cir. 1996) (citation omitted).  In addition, the United States Supreme Court has held that there is no reason to depart from the strong policy favoring arbitration where, as in this case, a party bound by an arbitration agreement raises claims founded on statutory rights.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

Section 3 of the FAA provides for a stay of proceedings where the court is satisfied that the issue before it is arbitrable under a written agreement providing for arbitration, and Section 4 of the FAA directs a federal court to compel arbitration if there has been a "'failure, neglect, or refusal' of any party to honor an agreement to arbitrate." Genesco, 815 F.2d at 844 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)); 9 U.S.C. §§ 3-4.  The Second Circuit has held that the FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  Genesco, 815 F.2d at 844 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original)).

B.    **Plaintiff Must Submit His Claims To Arbitration**

The Second Circuit in Genesco articulated the following criteria for a district court to assess in determining whether to compel arbitration and stay proceedings: (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable; and (4) if only some of the claims are arbitrable, whether to stay the balance of the proceedings pending arbitration.  815 F.2d at 844; see also Chamois v. Countrywide Home Loans, No. 02 Civ. 9550, 02 Civ. 9553, 2003 WL 23022033, at *2 n.3 (S.D.N.Y. Dec. 29, 2003) (Mukasey, J.) (noting that

where, as here, all of the claims at issue are subject to arbitration, the court need not

consider the fourth prong of the Genesco test).  "If this inquiry yields a finding that the

matter is arbitrable, the court must send the parties to arbitration; there is no room for

discretion."  Rice v. Brown Bros. Harriman & Co., No. 96 Civ. 6326, 1997 WL 129396,

at *2 (S.D.N.Y. Mar. 21, 1997) (Mukasey, J.) (granting defendant's motion to compel

arbitration of plaintiff's claims under the Age Discrimination in Employment Act, the

NYSHRL and the NYCHRL and stay the proceedings); see also Chamois, 2003 WL

23022033, at *5 (granting defendant's motion to compel arbitration of, inter alia,

plaintiffs' Title VII and NYSHRL claims and staying plaintiffs' actions pending the

completion of arbitration).

    1.   **The Arbitration Agreement Is A Valid Agreement To Arbitrate**

        With respect to the first Genesco factor, when determining whether a

contract to arbitrate has been established for the purposes of the FAA, federal courts

should apply "ordinary state-law principles that govern the formation of contracts" to

decide "whether the parties agreed to arbitrate a certain matter."  First Options of Chicago,

Inc. v. Kaplan, 514 U.S. 938, 944 (1995); see also Thomson-CSF, S.A. v. Am.

Arbitration Ass'n, 64 F.3d 773, 776-77 (2d Cir. 1995).  New York courts take the position

that a person who signs a contract is presumed to know its contents and assent to them.

See Gruber v. Louis Hornick & Co., Inc., No. 02 Civ. 5092, 2003 WL 21222541

(S.D.N.Y. May 23, 2003).  Thus, a person is "'bound by the terms of the [a]greement [he

or she signs], including the arbitration provision,' unless [he or] she can demonstrate

'special, mitigating circumstances, such as duress or coercion.'"  Schuetz v. CS First

Boston Corp., No. 96 Civ. 5557, 1997 WL 452392, at *2 (S.D.N.Y. Aug. 8, 1997) (first

alteration in original) (citation omitted); <u>see also</u> <u>Pilanski v. Metro. Life Ins. Co.</u>, No. 95 Civ. 10292, 1996 WL 622024, at *3 (S.D.N.Y. Oct. 28, 1996).

Here, it is clear that Mr. Jung executed the Arbitration Agreement as a condition of his employment by the Firm.  (<u>See</u> Schwartz Decl. Ex. B.)  The Arbitration Agreement clearly requires Mr. Jung to arbitrate all claims against the Firm and its employees and agents in their capacity as such.  (<u>See</u> <u>id.</u> at 1, ¶ 2.)  Mr. Jung cannot show that his consent to the Arbitration Agreement was improperly obtained.  In fact, the Application for Employment which Mr. Jung signed emphasized in bold capital letters that his employment with the Firm would be contingent upon him "**SIGNING A MUTUAL AGREEMENT TO ARBITRATE ALL CLAIMS**."  (<u>See</u> Schwartz Decl. Ex. D.) Moreover, when Mr. Jung, a graduate of the University of Buffalo, signed the Arbitration Agreement, he expressly acknowledged that he read it and understood its terms, and that he entered into the agreement voluntarily.  (<u>See</u> Schwartz Decl. Ex. B at 6.)

The United States Supreme Court and the Second Circuit have both held that "conditioning employment on the acceptance of an agreement to arbitrate disputes, including those arising under civil rights laws, is not itself unlawfully coercive." <u>Williams v. Parkell Prods., Inc.</u>, 91 F. App'x 707, 708 (2d Cir. 2003) (citing <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. at 123-24); <u>see also</u> <u>Tarulli v. Circuit City Stores, Inc.</u>, 333 F. Supp. 2d 151, 157 (S.D.N.Y. 2004) (rejecting plaintiff's argument that the arbitration agreement was unconscionable because it provided she would not be considered for the job if she did not sign it).  Mr. Jung made a calculated decision to accept employment with Skadden, Arps, premised on the condition that employment

related disputes would be settled through arbitration, not litigation. Accordingly, Mr. Jung is bound by the provisions of the Arbitration Agreement.

2. **Mr. Jung's Claims Are Within
The Scope Of The Arbitration Agreement**

The second area of inquiry is whether Plaintiff's claims fall within the scope of the Arbitration Agreement. See Genesco, 815 F.2d at 844. "Because federal policy favors arbitration as an alternative to litigation, [district courts are] required to construe arbitration agreements 'as broadly as possible' and to resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" Chamois, 2003 WL 23022033, at *3 (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998)). Accordingly, "[e]nforcement of an arbitration agreement in relation to a particular claim 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Rice, 1997 WL 129396, at *2 (quoting AT&T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 650, (1986)).

Mr. Jung will not be able to carry his burden of proving that the issues raised in the Amended Complaint are not covered by the Arbitration Agreement he signed in 1998.[8] The Arbitration Agreement, by its terms, covers "all claims or controversies, whether or not arising out of [Mr. Jung's] employment (or its termination) . . . that [he] may have against the Firm or its partners, employees or agents

---

[8]    When there is a dispute over the scope of the arbitration clause, "[t]he burden is on the party resisting arbitration to demonstrate that the disputed issue is collateral" to the arbitration clause. Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983).

in their capacity as such."[9]  (Schwartz Decl. Ex. B at 1, ¶ 2 (emphasis added).)  A broad arbitration agreement -- requiring the arbitration of all disputes between the parties -- creates a presumption that all claims must be submitted to arbitration.  Oldroyd, 134 F.3d at 74 (holding that a clause requiring the arbitration of "any dispute, controversy or claim arising under or in connection with" plaintiff's employment included a claim of retaliatory discharge); see also Rice, 1997 WL 129396, at *2 ("[The Arbitration Agreement] is broad and therefore must be read to include all employment disputes.").  As this Court has held, when parties mutually agree to submit all claims or controversies between them to binding arbitration, "[i]t would be difficult to imagine a clearer and more specific agreement to arbitrate."  Tuskey v. Volt Info. Scis., Inc., No. 00 Civ. 7410DABGWG, 2001 WL 873204, at *4 (S.D.N.Y. Aug. 3, 2001) (holding that a clause requiring arbitration of "[a]ny dispute, controversy or claim…arising out of, involving or related in any way to [plaintiff's] employment…or the termination of [plaintiff's] employment" demonstrated an intent to arbitrate all claims); see also Alemac Ins. Servs., Inc. v. Risk Transfer Inc., No. 03 Civ. 1162, 2003 WL 22024070, at *4 (S.D.N.Y. Aug. 28, 2003) (describing the language "any dispute or controversy" as "the paradigm of an expansive clause" giving rise to a "strong presumption of arbitrability").

Furthermore, the Arbitration Agreement specifically covers "claims alleging a violation of any federal, state or other governmental law [or] statute" and "claims of discrimination (including, but not limited to, claims based on race . . . [and] national origin."  (Schwartz Decl. Ex. B. at 1, ¶ 2 (emphasis added).)  When an arbitration agreement explicitly references the claims alleged by Plaintiff, "there can be

---

[9]    The Arbitration Agreement similarly requires that the Firm submit to arbitration any claims which it might have against Mr. Jung.

no issue that the claims asserted are within the scope of the arbitration agreement."
Moorning-Brown v. Bear, Stearns & Co., Inc., No. 99 Civ. 4130 JSR HBP, 1999 WL 1063233, at *4 (S.D.N.Y. Nov. 23, 1999).  Here, all of Mr. Jung's claims of alleged discrimination and retaliation under Title VII, NYSHRL and NYCHRL fall squarely within the specific parameters of the enumerated claims that are subject to binding arbitration.

3. **Mr. Jung's Statutory Discrimination Claims Are Arbitrable**

With respect to the third Genesco criterion, it is well settled that Mr. Jung's statutory discrimination claims raised in the Amended Complaint are arbitrable. Indeed, in Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc., 191 F.3d 198, 204-05 (2d Cir. 1999), the Second Circuit expressly held that Title VII claims can be subject to a mandatory pre-dispute arbitration clause.  Applying this holding, this Court routinely compels arbitration of Title VII claims.  See, e.g., Cicchetti v. Davis Selected Advisors, No. 02 Civ 10150RMB, 2003 WL 22723015, at *3 (S.D.N.Y. Nov. 17, 2003) (compelling arbitration of Title VII claim); Martens v. Smith Barney, Inc., 238 F. Supp. 2d 596, 602 (S.D.N.Y. 2002) (denying certification of interlocutory appeal where the court compelled arbitration of gender discrimination and retaliation claims under Title VII).

In Fletcher v. Kidder, Peabody & Co., Inc., 81 N.Y.2d 623, 601 N.Y.S.2d 686 (1993), the New York Court of Appeals made clear that state law discrimination claims under NYSHRL also are arbitrable.  81 N.Y.2d at 623, 601 N.Y.S.2d at 686 (decided under the FAA), cited in Rice, 1997 WL 129396, at *3 (compelling arbitration of plaintiff's discrimination claims under the NYSHRL and staying further proceedings pending conclusion of the arbitration); see also Chamois, 2003 WL 23022033, at *5

(granting defendant's motion to compel arbitration of Title VII and NYSHRL claims);

Martin v. SCI Mgmt. L.P., 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) (holding plaintiff's

claims under the NYSHRL were arbitrable); Wright v. SFX Entm't Inc., No. 00 CIV

5354SAS, 2001 WL 103433, at *3 (S.D.N.Y. Feb. 7, 2001) (holding statutory

discrimination claims under the NYSHRL are arbitrable).

   Likewise, discrimination claims under NYCHRL are also clearly

arbitrable.  See Rice, 1997 WL 129396, at *3 (compelling arbitration of plaintiff's claims

under the NYCHRL, stating that "Fletcher's reasoning would apply also to local law-

based discrimination claims"); accord Perry, 2004 WL 1698622, at *2 (compelling

arbitration of plaintiff's claims alleging violations of Title VII, the NYSHRL and the

NYCHRL); Beletsis v. Credit Suisse First Boston, Corp., No. 01 Civ. 6266, 2002 WL

2031610, at *6 (S.D.N.Y. Sept. 4, 2002) (holding plaintiff's claims under Title VII, the

NYSHRL and the NYCHRL were arbitrable); Pilanski, 1996 WL 622024 (compelling

arbitration of Title VII, NYSHRL and NYCHRL claims).

   Based on this overwhelming weight of authority, Mr. Jung cannot carry

his burden of establishing that Congress intended to exclude arbitration of his claims.

See Desiderio, 191 F.3d at 204.

  4. **This Entire Action Should Be Stayed
   Because All Of Mr. Jung's Claims Are Arbitrable**

   All of Mr. Jung's claims raised in the Amended Complaint are clearly

arbitrable.  Accordingly, there is no need to address the fourth Genesco, factor, i.e.,

whether, if only some of the claims are arbitrable, to stay the balance of the proceedings

pending arbitration.  See Chamois, 2003 WL 23022033, at *2 n.3 (stating that where all

of the claims at issue are subject to arbitration, the court need not consider the fourth

prong of the Genesco test).  Rather, this entire action should be stayed pending

completion of the arbitration proceeding.  9 U.S.C. § 3.

C.    **The Arbitrators Have "Exclusive Authority" To Determine
      The Applicability And Enforceability Of The Arbitration Agreement**

Even if there were a question about the validity or applicability of the

Arbitration Agreement in this case, which there is not, Plaintiff explicitly agreed to have

any such dispute resolved by the arbitration panel, and not by the Court:

> The [Arbitration] Panel, and not any federal, state or local court or
> agency, shall have exclusive authority to resolve any dispute
> relating to the interpretation, applicability, enforceability or
> formation of [the Arbitration] Agreement, including but not limited
> to any Claim that all or any part of this Agreement is void or
> voidable.

(Schwartz Decl. Ex. B at 4, ¶ B (emphasis added).)  The United States Supreme Court

and the Second Circuit have held that courts must honor an agreement to submit issues of

arbitrability and enforceability to the arbitrator.  See First Options, 514 U.S. at 943;

PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996).  As the Supreme Court

explained in First Options:

> Just as the arbitrability of the merits of a dispute depends upon
> whether the parties agreed to arbitrate that dispute, . . . so the
> question "who has the primary power to decide arbitrability" turns
> upon what the parties agreed about that matter.  Did the parties
> agree to submit the arbitrability question itself to arbitration?

514 U.S. at 943 (first emphasis in original); see also HD Brous & Co., Inc. v.

Mrzyglocki, No. 03 Civ. 8385, 2004 WL 376555, at *10 (S.D.N.Y. Feb. 26, 2004)

(noting that "parties may . . . provide that even threshold issues of arbitrability are

to be decided by arbitrators").

Here, the parties expressly agreed that the arbitrators have "exclusive authority" to determine whether the Arbitration Agreement is valid, enforceable or applicable to the parties' dispute.  This Court should honor that agreement.

## CONCLUSION

For the foregoing reasons, Skadden, Arps respectfully requests that this Court compel Plaintiff to arbitrate all of his claims against the Firm pursuant to the Arbitration Agreement, stay the instant action pending completion of the arbitration proceeding and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
      November 14, 2005

Respectfully submitted,

/s/ David E. Schwartz
Henry P. Baer (HB 1305)
David E. Schwartz (DS 4473)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Defendant
  Skadden, Arps, Slate,
  Meagher & Flom LLP