```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JONATHAN JUNG,                     :
                                   :
               Plaintiff,          :     05 Civ. 4286 (MBM)
                                   :
     -against-                     :     OPINION AND ORDER
                                   :
SKADDEN, ARPS, SLATE, MEAGHER      :
& FLOM, LLP,                       :
                                   :
               Defendant.          :
----------------------------------X
```

APPEARANCES:

BRENDAN CHAO, ESQ.
(Attorney for plaintiff)
150 Great Neck Road, Suite 304
Great Neck, NY 11021
(516) 466-2033

HENRY P. BAER, ESQ.
DAVID E. SCHWARTZ, ESQ.
(Attorneys for defendant)
Skadden, Arps, Slate, Meagher & Flom, LLP
4 Times Square
New York, NY 10036
(212) 735-3000

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiff Jonathan Jung sues his former employer Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), alleging discrimination on the basis of race and national origin, and retaliation for his protected activity in opposition to discriminatory acts.  Jung brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (2000); the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (McKinney 2005); and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. (1996 & Supp. 2005). Skadden moves to compel arbitration of Jung's claims and to stay litigation pending the completion of arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  For the following reasons, Skadden's motion is granted.

I.

Skadden, an international law firm whose principal place of business is New York City, hired Jung, an Asian-American of Korean descent, as a Tax Coordinator on or about September 8, 1998.  (Am. Compl. ¶¶ 1-2, 9, 13)  The application for employment that Jung had filled out and signed on August 10, 1998, contained the following clause: "In the event that an offer of employment is made, the offer will be subject to . . . signing a mutual agreement to arbitrate claims."  (Ex. D to Schwartz Decl. 4) Jung signed that agreement to arbitrate claims ("the Arbitration

Agreement") on September 8, 1998.  (Ex. B to Schwartz Decl. 6)

Skadden's Director of Human Resources signed the Arbitration

Agreement on December 22, 1998.  (<u>Id.</u>)  The Arbitration Agreement

stated:

> The Firm [Skadden] and I [Jung] mutually
> consent to the resolution by final and binding
> arbitration of all claims or controversies,
> whether or not arising out of my employment (or
> its termination), that the Firm may have against
> me or that I may have against the Firm or its
> partners, employees or agents in their capacity as
> such, including, but not limited to, . . . claims
> of discrimination (including, but not limited to,
> claims based on race, sex, sexual preference,
> religion, national origin, age, marital status,
> medical condition, handicap or disability); . . .
> and claims alleging a violation of any federal,
> state or other governmental law, statute,
> regulation or ordinance . . . .[1]  (<u>Id.</u> at 1)

The Arbitration Agreement provided further that "any arbitration

shall be conducted in accordance with the Commercial Arbitration

Rules of the American Arbitration Association ("AAA") (unless the

Firm elects that the arbitration be conducted pursuant to the

AAA's National Rules for the Resolution of Employment Disputes) .

. . ."  (<u>Id.</u> at 4)  On February 4, 2002, Skadden employees

received a memorandum documenting three changes to the

Arbitration Agreement made in response to developments in the law

governing the arbitration of employment disputes: for employees

initiating arbitration, Skadden would pay any difference between

---

[1] A separate paragraph enumerated claims excluded from the
agreement.  (<u>See</u> Ex. B to Schwartz Decl. 2)  None of the excluded
claims are relevant to this action.

2

the arbitration filing fees and court filing fees; the arbitrators would have the authority to order additional discovery requested by a party if the discovery were necessary and appropriate; and if the law of the jurisdiction where an employee was employed when a claim arose required a limitations period longer than the one-year period specified in the Arbitration Agreement, the longer period would govern.  (Ex. C to Schwartz Decl.)

Sometime between December 1999 and October 2002, Jung was promoted to International Tax Supervisor.  (Am. Comp. ¶¶ 18-20)  Jung alleges that, beginning in October 2002, while employed in Skadden's New York City office and later Skadden's White Plains office, he was subjected to numerous instances of discrimination based on his race and national origin, culminating in his dismissal on June 7, 2004, in retaliation for complaints he had made regarding the discrimination.  (Id. ¶¶ 16-71)  Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 12, 2004.  (Pl. Opp'n Mem. 3; Ex. 3 to Chao Aff.)  Skadden filed its position statement with the EEOC in opposition to Jung's charge on or about December 15, 2004.  (Ex. 4 to Chao Aff.)  Plaintiff received a Dismissal and Notice of Right to Sue letter from the EEOC on or about January 31, 2005.  (Am. Compl. ¶ 6)

On April 29, 2005, Jung initiated suit against Skadden

in this court.  (Def. Mem. 6; Pl. Opp'n Mem. 3)  On or about May
16, 2005, the parties stipulated to an agreement giving Skadden
until June 10, 2005, to respond to Jung's complaint.  (Ex. 5 to
Chao Aff.)  On June 10, 2005, Skadden moved to dismiss Jung's
Title VII and New York City Human Rights Law claims, pursuant to
Fed. R. Civ. P. 12(b)(6).  In a footnote to its memorandum of law
in support of the Rule 12(b)(6) motion, Skadden stated that "[b]y
filing this motion, the Firm is not waiving any claims or
defenses, including but not limited to, the right to compel
arbitration."  (Mem. of Law in Support of Defs.' Mot. To Dismiss
the First, Third, Fourth and Sixth Causes of Action in Pl.'s
Compl. 1 n.2)  In an opinion read into the record on October 20,
2005, I denied Skadden's motion to dismiss, granting Jung leave
to file an amended complaint.

       Skadden's counsel faxed Jung's counsel a copy of the
Arbitration Agreement on or about October 20, 2005, accompanied
by a letter requesting Jung to submit his claims to arbitration
and consent to a stay of litigation pending the outcome.  (Ex. E
to Schwartz Decl.)  The letter claimed that, in April 2004,
Skadden's counsel had notified Jung's prior counsel of the
arbitrability of any claims Jung might bring in court.  (Id. at
2)  Jung rejected Skadden's request to arbitrate and filed an
amended complaint on October 28, 2005.  (Ex. F to Schwartz Decl.;
Ex. B to Schwartz Decl.)  On November 14, 2005, Skadden brought

this motion to compel arbitration and stay litigation pending the completion of arbitration.

## II.

Section 3 of the FAA, 9 U.S.C. § 3, requires a district court to "stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (quoting McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P., 35 F.3d 82, 85 (2d Cir. 1994)) (internal quotation mark omitted). Section 4 of the FAA, 9 U.S.C. § 4, "directs a federal court to order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal of any party to honor an agreement to arbitrate.'" Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (quoting 9 U.S.C. § 4)) (internal quotation marks omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." WorldCrisa, 129 F.3d at 74 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original)) (internal quotation marks omitted). "In deciding whether to stay the proceedings and

compel arbitration, this court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the parties' arbitration agreement; and (3) whether Congress intended any federal statutory claims to be nonarbitrable."[2] <u>Chamois</u> v. <u>Countrywide Home Loans</u>, No. 02 Civ. 9550 (MBM), No. 02 Civ. 9553 (MBM), 2003 WL 23022033, at *2 (S.D.N.Y. Dec. 29, 2003) (citing <u>Genesco</u>, 815 F.2d at 844).

Although the FAA embodies a "strong presumption in favor of arbitration," <u>Thyssen, Inc.</u> v. <u>Calypso Shipping Corp., S.A.</u>, 310 F.3d 102, 104 (2d Cir. 2002) (quoting <u>Coca-Cola Bottling Co.</u> v. <u>Soft Drink & Brewery Workers Union Local 812</u>, 242 F.3d 52, 57 (2d Cir. 2001)), a party is on rare occasions "deemed to have waived its right to arbitration if it 'engages in protracted litigation that results in prejudice to the opposing party,'" <u>S & R Co. of Kingston</u> v. <u>Latona Trucking, Inc.</u>, 159 F.3d 80, 83 (2d Cir. 1998) (quoting <u>Cotton</u> v. <u>Slone</u>, 4 F.3d 176, 179 (2d Cir. 1993)).  If a party seeking to compel arbitration has engaged in "any prior litigation," the question of waiver is for the court to decide.  <u>Id.</u> (quoting <u>Doctor's Assocs., Inc.</u> v. <u>Distajo</u>, 66 F.3d 438, 456 n.12 (2d Cir. 1995)) (internal

---

[2] "In the event that only some claims are arbitrable, <u>Genesco</u> requires the court to determine whether to stay the balance of proceedings pending arbitration." <u>Chamois</u>, 2003 WL 23022033, at *2 n.3 (citing <u>Genesco</u>, 815 F.2d at 844).  This fourth prong of the <u>Genesco</u> test is not relevant here, because all of Jung's claims are arbitrable.  <u>See id.</u>

quotation marks omitted).

"While waiver of arbitration is not to be lightly inferred, the issue is fact-specific and there are no bright-line rules." Id.; see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995); Cotton, 4 F.3d at 179. "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's litigation results in prejudice to the opposing party." Thyssen, 310 F.3d at 105; see also Leadertex, 67 F.3d at 25. "The proximity of a trial date when arbitration is sought is also relevant." Leadertex, 67 F.3d at 25. Notwithstanding the complex of factors that a court may consider in determining waiver, "[t]he key to a waiver analysis is prejudice."[3] Thyssen, 310 F.3d at 105. The Second Circuit "has recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." Id.

"[A]ny doubts concerning whether there has been a waiver are resolved in favor of arbitration." Leadertex, 67 F.3d

---

[3] As the Eastern District of New York has recognized, "it is somewhat puzzling" that cases refer to prejudice "as simply one of a number of factors to be considered in assessing waiver," but also treat it as "the sine qua non for waiver." Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc., 97 F. Supp. 2d 320, 328 n.7 (E.D.N.Y 2000). I agree that other factors enumerated in the case law "should be understood to be factors affecting the singular issue of prejudice." Id.

at 25.

### III.

Jung does not contest Skadden's assertions that the Arbitration Agreement is valid, that the claims in this suit are within the scope of the Arbitration Agreement, and that Congress did not intend any of the claims to be nonarbitrable. Jung opposes Skadden's motion to compel arbitration and stay litigation on the sole ground that Skadden has waived its right to arbitrate. Jung alleges that he is subject both to substantive prejudice and to prejudice due to excessive cost and delay, as a result of Skadden's having waited to compel arbitration until after disposition of its Rule 12(b)(6) motion. Jung argues also that compelling arbitration would encourage impermissible forum shopping. I find that Jung has not suffered, and does not risk suffering, prejudice sufficient to establish waiver, and that Jung's forum shopping argument has already been rejected by the Second Circuit.

A.  Substantive Prejudice

Jung argues that, by compelling arbitration, this court would allow Skadden to relitigate unsuccessful positions taken in its Rule 12(b)(6) motion. (Pl. Opp'n Mem. 7) Although the Second Circuit has stated that substantive prejudice may exist

8

"when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration,"[4] Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991), it is a distortion of my October 20, 2005, opinion on Skadden's Rule 12(b)(6) motion to say that Skadden lost on the merits and is now seeking relitigation.

Skadden's Rule 12(b)(6) motion concerned whether Jung's Title VII claims were timely following receipt of the EEOC's Right to Sue letter, and whether Jung had pleaded a geographical nexus allowing application of the New York City Human Rights Law. I found merit both in Skadden's argument that the Title VII claims were untimely according to the information provided in Jung's complaint, and in Skadden's argument that Jung's complaint failed to state any acts of discrimination having an impact in New York City. However, taking into consideration the leniency of Fed. R. Civ. P. 15 and the fact that in response to Skadden's motion Jung presented evidence contradicting information in his complaint, I granted Jung an opportunity to replead. Jung's depiction of this court's permission to rectify facially meritless claims as a defeat for Skadden on the merits is a gross mischaracterization.

---

[4] The Second Circuit has held that dismissal of a claim in response to a Rule 12(b)(6) motion goes to the merits for res judicata purposes. Teltronics Servs., Inc. v. L.M. Ericsson Telecomm., Inc., 642 F.2d 31, 34 (2d Cir. 1981).

Moreover, Skadden's invocation of arbitration does not create a threat of relitigation.  The challenges to the original complaint raised in the Rule 12(b)(6) motion are dead letters; the amended complaint governs and renders the original complaint of no legal effect.  See Harris v. City of New York, 186 F.3d 243, 249 (2d Cir. 1999).  Jung may face similar challenges to the amended complaint in arbitration, just as Jung may face another Rule 12(b)(6) motion in response to the amended complaint in proceedings before this court, but such a situation is not relitigation.

Jung argues also that, by litigating the Rule 12(b)(6) motion, Skadden sought a "tactical advantage" not readily available in arbitration, and that such "machinations" create substantive prejudice analogous to the prejudice courts have found when parties engage in extensive pre-trial discovery before moving to compel arbitration.  (Pl. Opp'n Mem. 8-9)  Leaving aside the issue of whether the Commercial Arbitration Rules of the AAA or the AAA's National Rules for the Resolution of Employment Disputes permit motion practice similar to that allowed by Fed. R. Civ. P. 12, Jung's analogy does not hold.

The Second Circuit has determined that "sufficient prejudice to sustain a finding of waiver exists when a party takes advantage of pre-trial discovery not available in arbitration."  PPG Indus., Inc. v. Webster Auto Parts, Inc., 128

F.3d 103, 109 (2d Cir. 1997); accord Zwitserse Maatschappij Van
Levensverzekering En Lijfrente v. ABC Int'l Capital Markets
Corp., 996 F.2d 1478, 1480 (2d Cir. 1993) (per curiam).  Yet this
prejudice derives not from the mere pursuit of discovery, but
from "secur[ing] . . . the benefits of pretrial discovery that is
often unavailable in an arbitral forum."  Cotton, 4 F.3d at 180.
In other words, it is unfair to allow a party to gather
information that will be advantageous in a later arbitration
proceeding, if that information cannot be obtained in the
arbitration proceeding.  See Leadertex, 67 F.3d at 26 (finding no
prejudice where defendant "obtained no facts in discovery that
would have been unavailable in arbitration").  A Rule 12(b)(6)
motion, confined to the pleadings and documents incorporated
therein, does not pose this threat.  Discovery creates prejudice
when it is successful; a motion on the merits creates prejudice
when it fails.  If anything, Jung's prospective position in
arbitration has improved as a result of Skadden's Rule 12(b)(6)
motion, which alerted Jung to glaring deficiencies in his
complaint and presented an opportunity for their rectification.
Procedural differences between litigation and arbitration are not
in themselves evidence of substantive prejudice.

B.  Prejudice Due to Excessive Cost and Time Delay

        Jung alleges also that Skadden caused him to incur

11

unnecessary delay and expense by not providing plaintiff's counsel with a copy of the Arbitration Agreement before filing the Rule 12(b)(6) motion, and by waiting approximately six-and-a-half months after the start of litigation before moving to compel arbitration.  However, Second Circuit precedent stands squarely opposed to Jung's proposal for a bright-line rule mandating that "[i]f an arbitration agreement exists then the party wishing to exercise its rights under the agreement must be encouraged to do so at the earliest occasion, and not after unsuccessfully resorting to motion practice in federal court on the merits of the complaint."  (Pl. Opp'n Mem. 11)

          "[P]retrial expense and delay –- unfortunately inherent in litigation –- without more, do not constitute prejudice sufficient to support a finding a waiver."  Leadertex, 67 F.3d at 26.  Jung does not cite, and this court has not found, a single case in which waiver was based on as little pre-trial activity as occurred here.  See Latona Trucking, 159 F.3d at 84 (finding waiver by a moving defendant where the defendant filed a counterclaim against the plaintiff, made "extensive discovery requests," participated in two settlement conferences, and attempted to move to dismiss the action based on a forum-selection clause and to stay proceedings because the plaintiff was not authorized to do business in New York); PPG Indus., 128 F.3d at 108-109 (finding waiver by a moving plaintiff where the

plaintiff had initiated suit, engaged in discovery, and filed substantive motions in a related action); Leadertex, 67 F.3d at 26-27 (finding waiver by a moving defendant where the defendant filed an answer, amended answer, and answer to an amended complaint, "availed itself of the federal forum by its energetic pursuit of discovery," and waited until trial was imminent to move to compel arbitration); Zwitserse, 996 F.2d at 1479-81 (finding waiver where a party petitioning to compel arbitration had commenced a preliminary witness hearing in the Netherlands prior to seeking arbitration in the United States); Cotton, 4 F.3d at 179-80 (finding waiver by a moving defendant where the defendant failed to obtain immediate interlocutory appellate review of a denial of his motion to compel arbitration, and proceeded to conduct discovery, make several substantive motions, and "repeatedly invoke[] and submit[] himself to the powers and procedures of the district court"); Kramer, 943 F.2d at 179 (finding waiver where the moving party had engaged in "aggressive, protracted litigation for over a four-year period"); Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1577-78 (2d Cir. 1991) (finding waiver by a moving defendant where the "plaintiffs were put to the expense not only of engaging in extensive depositions, but also of defending motions for judgment on the pleadings and partial summary judgment" and "defendants did not move to compel arbitration until eighteen

13

months after they filed their answer"). Although an immediate
motion by Skadden to compel arbitration might have saved Jung
some time and money, prejudice sufficient to overcome the FAA's
preference for arbitration is not established so easily.

Indeed, in <u>Sweater Bee by Banff, Ltd.</u> v. <u>Manhattan
Industries, Inc.</u>, 754 F.2d 457 (2d Cir. 1985), the Second Circuit
held that there was no prejudice when "the only delay was the
time necessary for [a] Rule 12(b)(6) original motion and
reargument motion to be made, briefed, and decided." <u>See</u> <u>id.</u> at
463. Jung's allegation of excessive cost and time delay, which
derives exclusively from Skadden's Rule 12(b)(6) motion and the
brief extension of time given Skadden to file it, does not even
involve a reargument motion as in <u>Sweater Bee</u>.

Rejecting the concomitant policy argument that
"compelling arbitration would disserve judicial economy" by
encouraging "unnecessary Rule 12(b)(6) motions in otherwise
arbitrable cases," the <u>Sweater Bee</u> Court reiterated that a
defendant does not waive arbitration merely by litigating a Rule
12(b)(6) motion. <u>Id.</u> at 465. The Court stated that "the most to
be gained from such a motion is dismissal of a totally needless
and unmeritorious claim," and that a "defendant . . . runs the
risk that, even absent the initial submission of extraneous
material, a district court may label the motion as one for
summary judgment and dispose of it as such." <u>Id.</u> Moreover, the

14

Court commented that "by eliminating some of the claims as a matter of law the role of the arbitrator might be made more simple, because the arbitrator would then be able to concentrate on claims that have facial merit." Id. In this statement, the Second Circuit plainly contemplated that a defendant might use a Rule 12(b)(6) motion to dispose of a facially deficient claim before proceeding to arbitration. If not for the leniency with which federal law treats amendment of pleadings, Skadden's motion would have achieved just this end.

The Sweater Bee Court stated that it had "little doubt that a district judge can recognize the tactics of delay and harassment that operate to prejudice the opposing party and to cause him expense, thereby justifying a finding a waiver." Id. at 466. Given the minor costs that Skadden has forced Jung to incur in comparison to those incurred in other cases where waiver has been found, the viability of the Rule 12(b)(6) motion despite its denial, and Sweater Bee's apparent endorsement of such basic motion practice by a defendant facing claims subject to an arbitration agreement, Jung has not shown sufficient prejudice to overcome the "heavy burden" facing a party seeking a ruling that "his opponent has waived a conceded right to arbitration."[5]    Id.

---

[5]    That Sweater Bee involved a complaint containing both arbitrable and nonarbitrable claims, Sweater Bee, 754 F.2d at 463, does not suggest a different result.  Jung would have suffered no greater prejudice had he also alleged claims not covered by the Arbitration Agreement.

C.  Forum Shopping

        In support of his argument that compelling arbitration would encourage "impermissible forum and law shopping," Jung cites two cases involving actions to vacate or confirm an arbitration award.  (Pl. Opp'n Mem 9-11 (citing D.H. Blair & Co., Inc. v. Johnson, No. 95 Civ. 3463 (MBM), 1995 WL 422162 (S.D.N.Y. July 18, 1995); and U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86 (S.D.N.Y. 1990))  These cases concerned the circumstances under which a later-filed action in one federal district court to confirm or vacate an arbitration award did not have to yield to an earlier-filed action in another federal district court, D.H. Blair, 1995 WL 422162, at *1; Offshore, 752 F. Supp. at 89; they have no bearing on the extent to which a party can engage in litigation before seeking arbitration.

        The plaintiff in Sweater Bee made the same argument that Jung makes now, and the Second Circuit rejected it.  See Sweater Bee, 754 F.2d at 464-65 ("[The plaintiff] suggests . . . that while there may have been no prejudice in fact there is prejudice in law in [the defendant's] being able to 'forum shop' after the district court resolved issues going to the merits of [the plaintiff's] claims.")  The Court stated that even if this forum shopping deprives a plaintiff of "notice of the defendant's arbitration intentions," this deprivation is "not exactly what can be called severe prejudice, since presumably all that the

16

plaintiff could do on learning of defendant's intention to seek
arbitration at the time defendant filed a motion to dismiss under
Rule 12(b)(6) is himself seek the arbitration that [the
plaintiff] now wishes to avoid."[6]  Id. at 464.  "Such
'prejudice,'" the Court continued, "is highly speculative, if not
illusory," because if a plaintiff moves to compel arbitration at
the time a defendant files a Rule 12(b)(6) motion, "both parties
[can] only speculate not only as to how the court might resolve
the claims, but also as to whether the court will choose to
resolve any claims at all."  Id. at 464-65.

---

[6]  Thus, it is irrelevant that Skadden did not provide Jung
with a copy of the Arbitration Agreement or indicate a clear
intention to compel arbitration before the Rule 12(b)(6) motion
was decided.  Still, it is worth noting that Jung's memorandum of
law in opposition to Skadden's motion to compel is careful in
stating that the "first time counsel for [Jung] learned of an
arbitration agreement" was after denial of the Rule 12(b)(6)
motion, not that Jung himself was ever unaware of his obligations
under the Arbitration Agreement.  (Pl. Opp'n Mem. 2)

         *                    *                    *

         For the reasons set forth above, Skadden's motion to

compel arbitration and stay this action is granted.  The parties

are directed to proceed to arbitration according to the terms of

the Arbitration Agreement.  This action will remain in suspense

status pending the outcome of the arbitration.

                                        SO ORDERED:


Dated:  New York, New York            Michael B. Mukasey
        May 31, 2006                  U.S. District Judge

18